UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DONOVAN ROYALL,

                                    Plaintiff,

        v.

CITY OF BEACON, *et al.*,

                                    Defendants.

No. 24-CV-3 (KMK)

OPINION & ORDER

<u>Appearances</u>:

Pamela Gabiger, Esq.
Poughkeepsie, NY
*Counsel for Plaintiff*

David L. Posner, Esq.
McCabe & Mack LLP
Poughkeepsie, NY
*Counsel for Defendant City of Beacon*

Kimberly H. Lee, Esq.
Sokoloff Stern LLP
Poughkeepsie, NY
*Counsel for Defendant City of Beacon*

Leslie C. Perrin, Esq.
Civil Service Employees Association, Inc.
Albany, NY
*Counsel for Defendants Civil Service Employees Association and Emilio Giordano*

Deanna L. Collins, Esq.
Silverman & Associates
White Plains, NY
*Counsel for Defendants Board of Education of Beacon City School District, Nicholas Miller,
Brian Archer, Jessica Verdile, and Jessie Morrill*

KENNETH M. KARAS, United States District Judge:

Plaintiff Donovan Royall ("Plaintiff") brings this Action against the City of Beacon (the "City"); the Civil Service Employees Association ("CSEA") and Emilio Giordano ("Giordano," and together with CSEA, the "CSEA Defendants"); and the Board of Education of Beacon City School District (the "District"), Nicholas Miller ("Miller"), Brian Archer ("Archer"), Jessica Verdile ("Verdile"), and Jessie Morrill ("Morrill," and together with the District, Miller, Archer, and Verdile, the "District Defendants"). (*See generally* Compl. (Dkt. No. 1-1).)[1]  In the Complaint, Plaintiff raises multiple causes of action against Defendants, alleging that certain Defendants unlawfully maintained a hostile work environment, and discriminated and retaliated against Plaintiff on the basis of his race, gender, and age, in violation of both 42 U.S.C. § 1981 ("§ 1981") and the New York State Human Rights Law, N.Y. Exec. Law §§ 290, et seq. (the "NYSHRL"). (*See id.* ¶¶ 29–51.)[2]  Plaintiff also brings two additional claims arising under New York state law—one for breach of contract and another for defamation. (*See id.* ¶¶ 52–74.)

Before the Court are three Motions To Dismiss.  First, the City filed a Motion To Dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) (the "City's Motion"). (*See* City Not. of Mot. (Dkt. No. 23).)  Second, the CSEA Defendants filed a Motion to Dismiss under

---

[1] Collectively, the Court will refer to the City, the CSEA Defendants, and the District Defendants as "Defendants."

In addition, the Court notes that Plaintiff has also named South Avenue School ("SAS") as a Defendant. (*See generally* Compl.)  However, no one has appeared on behalf of SAS and that entity does not appear to be a party to any of the instant Motions. (*See generally* Dkt.)

[2] Unless otherwise noted (as here), the Court cites to the ECF-stamped page number in the upper-right corner of each page it cites from the record.

Separately, the Court notes that, on a number of occasions, the Complaint duplicates paragraph numbers, (*see, e.g.*, Comp. 31 (reflecting two paragraphs numbered 23)), and skips paragraph numbers, (*see, e.g.*, Compl. 67–68 (reflecting two paragraphs numbered 55, followed by a paragraph numbered 58)).  Thus, when citing the Complaint, the Court will, as necessary, provide additional information to make clear the paragraph to which it is, in fact, citing.

Rules 12(b)(1)–(2), (4)–(6). (the "CSEA Defendants' Motion"). (*See* CSEA Defs' Not. of Mot. (Dkt. No. 26).) And third, the District Defendants filed a Motion To Dismiss pursuant to Rule 12(b)(6) (the "District Defendants' Motion"). (*See* District Defs' Not. of Mot. (Dkt. No. 27).) For the reasons that follow, Defendant's Motions are granted.

## I. Background

### A. Factual Background

Unless otherwise stated, the following facts are drawn from the Complaint. The facts alleged therein are assumed true for the purpose of resolving the instant Motion. *See Buon v. Spindler*, 65 F.4th 64, 69 n.1 (2d Cir. 2023). However, given that the Complaint is replete with legal conclusions, (*see, e.g.*, Compl. ¶ 25 (alleging that Plaintiff "suffered because of Defendants' biased, discriminatory, hostile[,] and retaliatory conduct and unlawful employment practices, which were apparently and/or implicitly influenced by his skin tone, race/ethnicity (African American)[,] sex (male)[,] age (over 40)[,] and/or a combination of these protected characteristics. Defendants' conduct . . . changed [Plaintiff's] terms and conditions of employment for the worse.")), the Court emphasizes at the outset that it need not—and will not—accept such conclusions as true, at least to the extent that they are unaccompanied by supporting factual allegations, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is *inapplicable to legal conclusions*." (emphasis added)); *see also id.* at 679 ("While legal conclusions can provide the framework of a complaint, they *must* be supported by factual allegations." (emphasis added)).[3]

---

[3] Much of the Complaint is written in all capital letters. (*See generally* Compl.) Thus— for the sake of clarity and legibility—the Court has adjusted the capitalization to a grammatically proper format when quoting the Complaint in this Opinion.

1.  The Parties

The City is a municipal corporation located in Dutchess County and organized under the laws of the State of New York.  (*See* Compl. ¶¶ 1, 11.)  The District is a public school district that administers schools in, at minimum, the City.  (*See id.*. ¶ 10.)  SAS and Beacon High School (the "High School") are among the schools that the District administers.  (*See id.* ¶¶ 6, 15–17; *see also id.* ¶ 38 (subparagraph B, ECF page 48).)

As alleged, Plaintiff—who resides in the City—is an African American male and, at the time the Complaint was filed, he was 51 years old.  (*See id.* ¶¶ 1, 8.)  He was a District employee from around November 2022 until at least the time the Complaint was filed in December 2023.  (*See id.* ¶ 8.)  In particular, during that time he was assigned to SAS and appears to have worked as a custodian.  (*See id.* ¶¶ 16, 22.)

Archer is a Caucasian male and the "founder" of the District and SAS.  (*See id.* ¶ 16.)  He is alleged to have been the District's "highest ranking officer with the title of Working Supervisor from October 2018" until at least the time the Complaint was filed, and he "supervised a staff of [thirty] custodial works and maintenance professionals[.]"  (*See id.*)[4]  As alleged, Miller was Plaintiff's "boss" at SAS.  (*Id.* ¶ 22.)  Verdile is a Caucasian female and was Plaintiff's supervisor at SAS.  (*See id.* ¶ 18.)

CSEA is the union that represents Plaintiff a District employee.  (*See id.* ¶¶ 54, 58–59.)[5]

---

[4] Plaintiff also alleges that Archer was the District's "Director of Human R[e]sources and Student Services."  (Compl. ¶ 17.)  It is unclear whether Plaintiff identified the wrong Defendant as either the "Working Supervisor" or the "Director of Human Resources and Student Services."  (*Id.* ¶¶ 16–17.)

[5] In the Complaint, Plaintiff does not explain who Giordano is or, indeed, reference him at all beyond naming him in the caption.  (*See generally* Compl.)  Nor does Plaintiff explain who

### 2.  Incidents Giving Rise to this Action

#### a.  Events in September & October 2023

On September 29, 2023, Plaintiff was approached by his "boss" at SAS, Miller.  (*See id.* ¶ 22.)[6]  Although he "boost[ed]" Plaintiff "up like the best employee," he informed Plaintiff that he was being transferred to the High School and that he would be working the night shift.  (*Id.*)[7] In light of this labor-management issue, a meeting was set for October 3, 2023.  (*See id.*)

During the October 3 meeting, Miller—at first—told Plaintiff and an unnamed "union rep" that Plaintiff "did nothing wrong and that the move was to help . . . the [H]igh [S]chool." (*Id.*)  Later during that meeting, however, Miller informed Plaintiff that two women "put in an informal complaint about him[,] stating [that] he made them feel uncomfortable."  (*Id.*) Although Plaintiff demanded that the complainants formalize their complaints, for two weeks after the October 3 meeting, neither Plaintiff nor CSEA received any requested documentation of the complaints.  (*See id.*)

Plaintiff next met with Archer and Miller's "boss," Morrill, as well as a "union rep," regarding the complaints on October 16, 2023.  (*See id.*)[8]  Although he was shown no formal

___

Morrill is (beyond stating that he was Miller's "boss"), but the Court gathers that he worked for the District.  (*See id.* ¶¶ 22, 25).

[6] Given that paragraph 22 of the Complaint spans approximately five pages, it can hardly be said to be the sort of "short and plain statement" envisioned under Rule 8, even at the font size used in the Complaint.  *See* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain[] . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]").

[7] As alleged, when Plaintiff informed CSEA of this transfer and shift change, he was told that Miller "broke the contract by not [providing notice within] the proper time frame."  (Compl. ¶ 22.)

[8] Although the Complaint states that this meeting took place on "September 16, 2023," the Court presumes that it took place in October, based on the timeline set forth therein.  (Compl. ¶ 22.)

complaints, Plaintiff was told there were issues with "how many times [he] smoke[d] cigarettes," and that SAS had gotten a complaint about him from Verdile. (*Id.*) With respect to Verdile—a "friend" of Plaintiff's "outside of work"—Plaintiff was told that she did not "feel comfortable around him because he sent her a text message" in which he said that she "was a fucked up friend and he would never be a friend like that." (*Id.*) Upon learning this information, Plaintiff responded, saying "there [was] no way she should be uncomfortable around him because she felt comfortable to call him at [2:00 a.m., expressing suicidal ideation] and he talked her down[.]" (*Id.*) Further, to show how comfortable Verdile actually was with him, Plaintiff asserted that she "sat at work and told him about her sex life and the size of one of their co-worker's private parts." (*Id.*) Plaintiff then went on to suggest that Miller and Verdile conspired to "get him moved because he was outperforming [Verdile] at work." (*Id.*) Following his comments, Plaintiff alleges that Archer and Morrill "agreed in front of [the] union rep that the contract was broken[,] but they continued to bully him into going to [the H]igh [S]chool and [to] shut up." (*Id.*)[9]

Plaintiff avers that the transfer and shift change imposed upon him evidenced "underhanded racism," given that these actions were part of "a pattern" unidentified Defendants "have with minorities and immigrants that work for the [D]istrict." (*Id.*) Specifically, Plaintiff alleges that he had "a co[-]worker that went through the same thing and it wasn't until he had a lawyer on the case that [unidentified individuals and/or entities] backed off and fixed the situation." (*Id.*)

---

[9] According to Plaintiff, Archer and Morrill told him that he "should not speak to anyone at [SAS]" about the transfer, and Plaintiff suggests that that was so because "he [was] very much liked [at SAS] by numerous teachers and students[,] and [Archer and Morrill] didn't want them to know what[ was] going on." (Compl. ¶ 22.)

Finally, Plaintiff asserts that his transfer to the night shift at the High School "sabotaged and/or prevented [him] from advancing in his career." (*Id.* ¶ 26.)

### b. Incident Involving Verdile & Mr. McNair

Plaintiff also alleges that on or around December 1, 2023, while on a cigarette break, Verdile told "a landscaping man named Mr. McNair" ("McNair") that Plaintiff "sexually harassed people." (*See id.* ¶¶ 67–68.) Verdile further told McNair that Plaintiff "was sleeping in the office" and that Plaintiff "would leave the building and go across the street to the projects in which he grew up [] and [where he] still [had] family." (*Id.* ¶ 69.) Plaintiff asserts that everything Verdile told McNair was a lie. (*See id.* ¶¶ 67, 69.)

Notably, Plaintiff had been doing some work on the side for McNair. (*See id.* ¶¶ 67, 70.) But, after he spoke with Verdile, McNair informed Plaintiff that "because [Plaintiff] sexually harassed people, [McNair] would not allow [Plaintiff] to do landscaping for his company." (*Id.* ¶ 70.)

### 3. Additional General Allegations

In addition to the foregoing facts, the Court notes that Plaintiff raises several additional allegations. Although the timing is far from clear, Plaintiff alleges that he raised complaints with unidentified Defendants concerning unspecified discriminatory treatment that those Defendants failed to address. (*See id.* ¶¶ 26, 33 (ECF page 41), 40, 44 (subparagraph C, ECF page 58); *see also id.* ¶ 38 (subparagraph A, ECF page 47) (asserting—in connection with his § 1981 hostile work environment claim—that "Defendants" failed to investigate and remediate "in a timely fashion, Plaintiff[']s written and verbal complaints that he was experiencing ongoing severe or pervasive racial/sex and age discrimination and racial harassment and sexual harassment at work by his supervisors and/or by coworkers").) Plaintiff also contends throughout his Complaint that, when Verdile "sat at work and told him about her sex life and the size of one of their co-

worker's private parts[,]" those comments amounted to sexual harassment. (*Id.* ¶ 22; *see also id.* ¶¶ 28, 33 (subparagraph F, ECF page 44), 38 (subparagraph B, ECF pages 48–49), 44 (subparagraph B, ECF pages 57–58), 48 (ECF page 63).)

        B.  Procedural History

        Plaintiff filed his Complaint in state court on December 18, 2023.  (*See* Compl.)  The District removed the case to this Court on January 2, 2024.  (*See* Not. of Removal (Dkt. No. 1).) Later that month, Defendants all filed pre-motion letters addressed to Plaintiff's counsel, indicating their intention to move to dismiss the Complaint.  (*See* Letter from David L. Posner, Esq. to Pamela Gabiger, Esq. (Jan. 10, 2024) (the City's pre-motion letter) (Dkt. No. 9); Letter from Deanna L. Collins, Esq. to Pamela Gabiger, Esq. (Jan. 19, 2024) (the District Defendants' pre-motion letter) (Dkt. No. 10); Letter from Leslie C. Perrin, Esq. to Pamela Gabiger, Esq. (Jan. 25, 2024) (the CSEA Defendants' pre-motion letter) (Dkt. No. 19).)  Plaintiff did not respond to any of Defendants' pre-motion letters.  (*See generally* Dkt.)  Thus, the Court adopted a briefing schedule in early February 2024.  (*See* Dkt. No. 20 (setting a briefing schedule for the CSEA Defendants' Motion on February 2, 2024); *see also* Dkt. No. 22 (applying the same briefing schedule to the City's and District Defendants' Motions on February 6, 2024).)

        Pursuant to that briefing schedule, the City filed its Motion and accompanying papers on February 23, 2024.  (*See* City Not. of Mot.; Affidavit of David L. Posner, Esq. in Supp. of City Mot. (Dkt. No. 24); Mem. of Law in Supp. of City Mot. ("City Mem.") (Dkt. No. 25).)  So too did the CSEA Defendants, (*see* CSEA Not. of Mot.; Decl. of Leslie C. Perrin, Esq. in Supp. of CSEA Defs' Mot. (Dkt. No. 26-1); Mem. of Law in Supp. of CSEA Defs' Mot. ("CSEA Defs' Mem.") (Dkt. No. 26-6)), and the District Defendants, (*see* District Defs' Not. of Mot.; Decl. of Deanna L. Collins, Esq. in Supp. of District Defs' Mot. (Dkt. No. 28); Mem. of Law in Supp. of District Defs' Mot. ("District Defs' Mem.") (Dkt. No. 29)).  Plaintiff filed his Opposition on

February 27, 2024. (*See* Mem. of Law in Opp'n to Mots. ("Pl's Opp'n") (Dkt. No. 35).)[10]

Defendants all filed their Replies on or before the April 11, 2024 deadline. (*See* Reply Mem. of

_____

[10] In light of it myriad deficiencies—even putting aside the inordinate number of typographical and formatting errors—the Court is compelled to comment on Plaintiff's Opposition. As an initial matter, the Opposition fails to comply with this District's Local Civil Rules, as well as the Court's Individual Rules of Practice. Starting with the former, Local Civil Rule 7.1(a)(2) requires that memoranda of law "set[] forth the cases and other authorities relied on" and that counsel "divide[ them] under appropriate headings[] into as many parts as there are issues to be determined[.]" *See also id.* Rule 7.1(b) (applying the requirements of Local Civil Rule 7.1.(a)(2) to opposition briefs). However, Plaintiff's Opposition does not contain a Table of Authorities, nor does it have any meaningful headings. (*See generally* Pl's Opp'n.)

Next, this Court's Individual Rules of Practice provide that opposition briefs "are limited to 25 pages" and that briefs "of 10 pages or more shall contain a table of contents." Individual Rules of Practice of the Honorable Kenneth M. Karas § II.B. The Court's Individual Rules further require that "[a]ll memoranda of law shall be produced in a 12-point font, be double-spaced, and have one-inch margins on all sides." *Id.* Plaintiff's Opposition, however, is more than *fifty* pages long, has no Table of Contents, and uses a font size that *far* exceeds the Court's 12-point requirement. (*See generally* Pl's Opp'n.) Simply put, Plaintiff's counsel has submitted a brief that egregiously violates both this District's Local Civil Rules *and* this Court's Individual Rules. Plaintiff's counsel is admonished to familiarize herself with these Rules and comply with them moving forward.

In addition to the foregoing, from a substantive standpoint "[t]he Court cannot overlook [P]laintiff's subpar efforts in opposing the [M]otion[s]." *Prakash v. Homecomings Fin.*, No. 05-CV-2895, 2006 WL 2570900, at *5 n.7 (E.D.N.Y. Sept. 5, 2006). "Plaintiff fails to distinguish the cases cited by [D]efendant[s]" or even to *address* Defendants' arguments. *Id.* Given Plaintiff's abject failure to respond to the legal arguments raised by Defendants—as noted where relevant below—the Court would be within its authority to consider many of Plaintiff's claims abandoned or many of Defendants' arguments conceded. *See, e.g.*, *Verdi v. City of New York*, 306 F. Supp. 3d 532, 552 (S.D.N.Y. 2018) (holding that where the plaintiff "did not respond to [the defendant's] arguments in his opposition . . . [the p]laintiff abandoned his . . . claims," and, thus, "dismiss[ing] [those claims] with prejudice"); *McLeod v. Verizon N.Y., Inc.*, 995 F. Supp. 2d 134, 143 (E.D.N.Y. 2014) ("Indeed, courts in [the Second C]ircuit have held that '[a] plaintiff's failure to respond to contentions raised in a motion to dismiss claims constitute an abandonment of those claims.'" (alteration in original) (quoting *Youmans v. Schriro*, No. 12-CV-3690, 2013 WL 6284422, at *5 (S.D.N.Y. Dec. 3, 2013))); *Brandon v. City of New York*, 705 F. Supp. 2d 261, 268 (S.D.N.Y. 2010) (collecting cases finding claims abandoned when a plaintiff fails to address the defendants' arguments).

Finally, the Court notes that Plaintiff sought to add to the factual allegations in the Complaint through two affidavits submitted in opposition to the instant Motions, the first of which is more than *eighty* pages long (albeit in the very large font that Plaintiff's counsel seems to prefer). (*See* Aff. of Donovan Royall in Opp'n to Mots. (Dkt. No. 34); First Supp. Aff. of Donovan Royall in Opp'n to Mots. (Dkt. No. 36).) The Court has not considered these submissions, however, because "it is generally improper to consider [a plaintiff's] affidavits in

Law in Supp. of District Defs' Mot. ("District Defs' Reply") (Dkt. No. 37); Reply Mem. of Law

in Supp. of City Mot. ("City Reply") (Dkt. No. 38); Mem. of Law in Supp. of CSEA Defs' Mot.

("CSEA Defs' Mem.") (Dkt. No. 39).)[11]

## II.  Discussion

### A.  Standards of Review

#### 1.  Rule 12(b)(2)

On a Rule 12(b)(2) motion, the plaintiff has the burden of establishing that the court

maintains jurisdiction over the defendant.  *See In re Magnetic Audiotape Antitrust Litig.*, 334

F.3d 204, 206 (2d Cir. 2003).  However, "prior to discovery, a plaintiff challenged by a

jurisdiction testing motion may defeat the motion by pleading in good faith legally sufficient

allegations of jurisdiction, i.e., by making a prima facie showing of jurisdiction." *Jazini v.*

*Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998) (alteration, italics, citations, and quotation

marks omitted); *see also Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008)

("Where . . . a district court relies on the pleadings and affidavits, and chooses not to conduct a

---

ruling on a motion to dismiss." *Peffers v. Stop & Shop Supermarket Co. LLC*, No. 14-CV-3747, 2015 WL 5460203, at *1 n.2 (S.D.N.Y. June 9, 2015) (citation omitted); *see also Trustees of Empire State Carpenters Annuity, Apprenticeship v. Syracuse Floor Sys., Inc.*, No. 13-CV-1509, 2013 WL 7390601, at *3 (E.D.N.Y. Dec. 16, 2013) (Report & Recommendation) (declining to consider a declaration submitted in support of a motion to dismiss because it was "not incorporated in the complaint by reference, [was] not a document upon which the plaintiffs solely relied in bringing th[at] action and integral to the [c]omplaint, and [was] not a matter of public record, but rather concerns matters outside the pleadings").

[11] Since the instant Motions were fully submitted on April 11, 2024, Plaintiff—through counsel—has continued filing unauthorized and improper submissions to bolster his Complaint. (*See* Letter from Pamela Gabiger, Esq. to Court (June 16, 2024) (noting that, even though he is suing the City, he called the police to report a robbery at a Beacon jewelry store) (Dkt. No. 40); Letter from Donovan Royall to Court (Aug. 5, 2024) (noting the mental and emotional suffering Plaintiff has experienced as a result of Defendants' alleged actions) (Dkt. No. 41); *see also* Second Supp. Aff. of Donovan Royall in Opp'n to Mots. (Dkt. No. 42).)  Again, the court has not considered these submissions in connection with resolving the instant Motions. *See Peffers*, 2015 WL 5460203, at *1 n.2; *Syracuse Floor Sys., Inc.*, 2013 WL 7390601, at *3.

full-blown evidentiary hearing, plaintiffs need only make a prima facie showing of personal jurisdiction over the defendant." (citation and quotation marks omitted)).  "[A] prima facie showing of jurisdiction does not mean that [the] plaintiff must show only some evidence that [the] defendant is subject to jurisdiction; it means that [the] plaintiff must plead facts which, if true, are sufficient in themselves to establish jurisdiction." *Bellepointe, Inc. v. Kohl's Dep't Stores, Inc.*, 975 F. Supp. 562, 564 (S.D.N.Y. 1997).  A plaintiff may "make this showing through his own affidavits and supporting materials, containing an averment of facts that, if credited . . . , would suffice to establish jurisdiction over the defendant." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001) (alteration, citations, and quotation marks omitted).

While a court may consider materials beyond the pleadings, the court must credit a plaintiff's allegations in support of jurisdiction and "construe the pleadings and any supporting materials in the light most favorable to the plaintiffs." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013) (citing *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010)); *see also A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir. 1993) ("[W]here the issue is addressed in affidavits, all allegations are construed in the light most favorable to do the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party.").  However, "[p]leadings that assert only 'conclusory non-fact-specific jurisdictional allegations' or state a 'legal conclusion couched as a factual allegation' do not meet this burden." *Pruthi v. Empire City Casino*, No. 18-CV-10290, 2022 WL 596370, at *2 (S.D.N.Y. Feb. 28, 2022) (quoting *Jazini*, 148 F.3d at 185); *see also Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994) (explaining that a court cannot "draw 'argumentative inferences' in the plaintiff's favor" in considering Rule

12(b)(2) motion (quoting *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992))).

### 2.  Rule 12(b)(5)

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007).  Valid service is a prerequisite for a federal court to assert personal jurisdiction over a claim.  *See Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987).  "When a defendant moves to dismiss under Rule 12(b)(5), the *plaintiff* bears the burden of proving adequate service." *Dickerson v. Napolitano*, 604 F.3d 732, 752 (2d Cir. 2010) (emphasis added) (alteration adopted) (quotation marks omitted); *see also Tomney v. Int'l Ctr. for the Disabled*, No. 02-CV-2461, 2003 WL 1990532, at *3 (S.D.N.Y. Apr. 29, 2003) ("Once a defendant raises a challenge to the sufficiency of service of process, the plaintiff bears the burden of proving its adequacy.").  In determining the sufficiency of service, the Court "must look to matters outside the complaint to determine what steps, if any, the plaintiff took to effect service." *C3 Media & Mktg. Grp., LLC v. Firstgate Internet, Inc.*, 419 F. Supp. 2d 419, 427 (S.D.N.Y. 2005) (quotation marks omitted); *see also PH Int'l Trading Corp. v. Nordstrom, Inc.*, No. 07-CV-10680, 2009 WL 859084, at *3 (S.D.N.Y. Mar. 31, 2009) ("A court may, on a Rule 12(b)(5) motion to dismiss, consider affidavits and documents submitted by the parties without converting the motion into one for summary judgment under Rule 56." (alteration adopted) (quotation marks omitted)).

"While Rules 12(b)(5) and 12(b)(2) are independent bases upon which dismissal may be granted, when service of process is at issue, they are 'closely interrelated.'" *Fantozzi v. City of New York*, 343 F.R.D. 19, 25 (S.D.N.Y. 2022) (quoting 5B Charles A. Wright & Arthur R.

Miller, Federal Practice and Procedure § 1353 (3d ed. 2022)).  Thus, "insufficient service can subject a complaint to dismissal under both rules." *Id.*; *see also George v. N.Y.C. Health & Hosps. Corp.*, No. 09-CV-3833, 2012 WL 1072274, at *3 (E.D.N.Y. Mar. 29, 2012) (dismissing a complaint "pursuant to Rules 12(b)(2) and 12(b)(5) for failure to establish personal jurisdiction due to insufficient service of process").[12]

### 3. Rule 12(b)(6)

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quotation marks omitted).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

---

[12] The Court acknowledges that the CSEA Defendants have moved to dismiss under Rule 12(b)(4) as well.  (*See, e.g.*, CSEA Not. of Mot.)  "An objection under Rule 12(b)(4) concerns the form of the process rather than the manner or method of its service.  Technically, therefore, a Rule 12(b)(4) motion is proper only to challenge noncompliance with the provisions of Rule 4(b) or any applicable provision incorporated by Rule 4(b) that deals specifically with the content of the summons." *Vega v. Hastens Beds, Inc.*, 339 F.R.D. 210, 215 (S.D.N.Y. 2021) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1353); *see also id.* ("Other than [] cases in which it is confused with a motion under Rule 12(b)(5), a motion under Rule 12(b)(4) is fairly rare." (citation omitted)).  Because they do not make any arguments concerning the *form* of Plaintiff's process, the Court construes the Rule 12(b)(4) portion of the CSEA Defendants' Motion as being entirely subsumed within the Rule 12(b)(5) portion of that Motion.

Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  Additionally, "when ruling on a Rule 12(b)(6) motion to dismiss," district courts are directed to confine their consideration to "the complaint in its entirety, . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (quotation marks omitted); *see also Dashnau v. Unilever Mfg. (US), Inc.*, 529 F. Supp. 3d 235, 240 (S.D.N.Y. 2021) (same).

B.  Analysis

In the Complaint, Plaintiff raises seven causes of action.  (*See* Compl. ¶¶ 29–74.)[13]  First, Plaintiff claims that he was subjected to discrimination on the basis of his race, gender, and age in violation of § 1981.  (*See id.* ¶¶ 29–35.)  Second, Plaintiff asserts that "all Defendants" subjected him to a hostile work environment in violation of § 1981.  (*See id.* ¶¶ 37–38 (second).)  Third, he claims that he was retaliated against on the basis of his race, gender, and age in violation of § 1981.  (*See id.* ¶¶ 39–43 (first).)  Fourth and fifth, Plaintiff raises discrimination/retaliation and hostile environment claims relying on the same basis pursuant to the NYSHRL.  (*See id.* ¶¶ 43 (second)–51.)  Sixth, Plaintiff brings a state-law claim alleging breach of contract.  (*See id.* ¶¶ 52–65.)  And seventh, Plaintiff brings a defamation claim under state law based on Verdile's comments to McNair.  (*See id.* ¶¶ 66–74.)[14]

The Court will address each of the Motions before it in turn.

1.  The City's Motion

Beginning with the City's Motion, the City argues that Plaintiff has failed to state a claim against it because—beyond naming it in the caption and defining it as a municipal corporation—it has leveled no allegations, much less any causes of action, against it.  (*See* City Mem. 5 (citing Compl. ¶ 11).)  The Court agrees.

---

[13] The Court recognizes that it must draw all reasonable inferences in Plaintiff's favor at this stage of the litigation, *see Daniel*, F. Supp. 2d at 304 n.1, but Plaintiff is represented by counsel and therefore the Court emphasizes that he is *not* entitled to having the Court interpret his Complaint to raise the strongest argument it obliquely suggests, as it would for a pro se plaintiff, *see Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013).

[14] Although Plaintiff references the New York Labor Law and mentions issues concerning, inter alia, overtime wages and timekeeping, (*see, e.g.* Compl. ¶¶ 2, 6, 15), he does not appear to assert a cause of action thereunder, (*see generally id.*; Pl's Opp'n).

"[W]here a plaintiff names a defendant in the caption, but the complaint contains no substantive allegations against the defendant, [courts have long held that] dismissal of the complaint as to that defendant is appropriate." *Robinson v. Spano*, No. 20-CV-642, 2020 WL 528856, at *2 (S.D.N.Y. Jan. 31, 2020) (citing *Iwachiw v. N.Y. State Dep't of Motor Vehicles*, 299 F. Supp. 2d 117, 121 (E.D.N.Y. 2004), *aff'd*, 396 F.3d 525 (2d Cir. 2005)); *accord Al-Haj v. Akuamoah*, No. 19-CV-6072, 2021 WL 964211, at *5 (S.D.N.Y. Mar. 15, 2021) ("Where . . . a plaintiff names a defendant in the caption, but the complaint contains no substantive allegation against the defendant, dismissal of the complaint is appropriate." (citation omitted))).; *Dove v. Fordham Univ.*, 56 F. Supp. 2d 330, 335 (S.D.N.Y. 1999) ("[W]here the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted." (citation omitted)), *aff'd sub nom. Dove v. O'Hare*, 210 F.3d 354 (2d Cir. 2000); *see also Blanco v. Success Acad. Charter Sch., Inc.*, No. 23-CV-1652, 2024 WL 3427076, at *4 (S.D.N.Y. July 16, 2024) (holding that "[b]ecause there are no allegations against [a named defendant]" beyond an allegation as to her identity, "she must be dismissed" from the case). Here, the Complaint merely notes that the City is a municipal corporation organized under the law of the State of New York. (*See* Compl. ¶ 11.) Because there are no substantive allegations against the City in the Complaint relating Plaintiff's claims, it "must be dismissed." *Blanco*, 2024 WL 3427076, at *4.

In his Opposition, Plaintiff obliquely suggests that he is raising a municipal liability claim against the City under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). (*See* Pl's Opp'n 26 (citing *Monell*).) But, "to prevail on a claim against a municipality . . . based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law;

16

(2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008). "In determining municipal liability, it is necessary to conduct a separate inquiry into whether there exists a 'policy' or 'custom.'" *Kiss v. Torres*, No. 21-CV-10391, 2024 WL 1210941, at *20 (S.D.N.Y. Mar. 19, 2024) (quoting *Davis v. City of New York*, 228 F. Supp. 2d 327, 336 (S.D.N.Y. 2002), *aff'd*, 75 F. App'x 827 (2d Cir. 2003) (summary order)). Normally, "a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [municipality]." *Newton v. City of New York*, 566 F. Supp. 2d 256, 271 (S.D.N.Y. 2008); *see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) (plurality opinion) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."). Because Plaintiff has failed to raise *any* allegations against the City, he has necessarily failed to plausibly plead a *Monell* claim against it.

In short, the Court grants the City's Motion.

### 2. The CSEA Defendants' Motion

Next, the Court considers the CSEA Defendants' Motion. The CSEA Defendants first argue that the Court does not have personal jurisdiction over CSEA because it was never properly served. (*See* CSEA Defs' Mem. 9–10.) Next, the CSEA Defendants assert that Plaintiff's Complaint fails to state a claim against them because it merely raises against "Defendants" as a group and does not mention Giordano at all. (*See id.* at 11–12.) In addition, the CSEA Defendants contend that Plaintiff has failed to state a § 1981 claim against them because there are no allegations that they discriminated or retaliated against him on the basis of any protected characteristic. (*See id.* at 13–14.) Finally, the CSEA Defendants argue that

Plaintiff's breach of contract claim—which they construe as a claim for a breach of the duty of fair representation—must fail because he failed to plead facts establishing arbitrary, discriminatory, retaliatory, of bad-faith union representation. (*See id.* at 15–18.)

The Court will address the CSEA Defendants' arguments only as necessary to resolve their Motion.

### a. CSEA

With respect to service of process on CSEA, a plaintiff may serve a summons and complaint upon a corporate defendant in one of two ways authorized by the Federal Rules of Civil Procedure: (1) under Rule 4(h)(1)(B), "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant"; or (2) by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made," Fed. R. Civ. P. 4(e)(1). The law in New York—that is, the state in which this Court is located—provides that "[p]ersonal service upon a corporation . . . shall be made by delivering the summons . . . upon any domestic or foreign corporation, to an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service." N.Y. C.P.L.R. § 311(a)(1). As an alternative to this method, Plaintiff could have served CSEA "by first class mail" pursuant to N.Y. C.P.L.R. § 312-a, "but only if [the summons and complaint is] accompanied by two copies of a statement of service by mail and acknowledgment of receipt (in a specified form), with a return envelope, postage prepaid, addressed to the sender." *Gold Medal*

*Produce Inc. v. Ricosu Tropical Prods., Inc.*, No. 09-CV-9858, 2010 WL 2267728, at *1 (S.D.N.Y. May 28, 2010).[15]

On January 23, 2024, Plaintiff filed a flurry of Affidavits of Service. (*See* Dkt. Nos. 13–17.) Although none of those documents purports to be for CSEA on the docket itself, (*see generally* Dkt.), they are identical to one another and appear to cover all of Plaintiff's service efforts, (*see* Dkt. Nos. 13–17.) They do not, however, mention CSEA outside of the caption and, at most, state that Plaintiff's counsel personally served Giordano with the summons and complaint. (*See id.*) Moreover, Plaintiff nowhere explains who Giordano is or what his connection is to CSEA. (*See generally* Compl.) Thus, the Court cannot determine whether Giordano is "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process" for purposes of Rule 4, Fed. R. Civ. P. 4(h)(1)(B), or whether he is "an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service" for purposes of New York law, N.Y. C.P.L.R. § 311(a)(1).

Importantly, as noted, "the burden to show that service was adequate rests with the plaintiff[.]" *Holmes v. Caliber Home Loans, Inc.*, No. 16-CV-3344, 2017 WL 3267766, at *11 n.8 (S.D.N.Y. July 31, 2017) (quoting *C3 Media & Mktg. Grp., LLC*, 419 F. Supp. 2d at 427). And here, Plaintiff has plainly failed to meet that burden, because he has made *no* effort to

---

[15] Service under this method is effective only if the defendant completes the acknowledgment of receipt form and returns it to the sender. *See* N.Y. C.P.L.R. § 312-a(b)(1) ("The defendant, an authorized employee of the defendant, defendant's attorney or an employee of the attorney must complete the acknowledgement of receipt and mail or deliver one copy of it within thirty (30) days from the date of receipt. Service is complete on the date the signed acknowledgment of receipt is mailed or delivered to the sender. The signed acknowledgement of receipt shall constitute proof of service.").

demonstrate he has properly served CSEA; indeed, he did not even bother to respond to the CSEA Defendants service arguments. (*See* Pl's Opp'n.) Thus, because Plaintiff has not demonstrated that he has served CSEA by *any* method authorized under Rule 4, the Court cannot exercise personal jurisdiction over CSEA. *See Omni Cap.*, 484 U.S. at 104.[16]

### b. Giordano

Turning to Giordano, the CSEA Defendants do not argue that Plaintiff improperly served him. (*See generally* CSEA Defs' Mem.) Instead, they contend that Plaintiff fails to state against him because, aside from naming him in the caption, Plaintiff does not reference him in the Complaint *at all*. (*See id.* at 12.) The Court agrees.

As noted above in connection with the City's Motion, *see supra* Section II.B.1, when a "complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted," *Latimer v. Annucci*, No. 21-CV-1275, 2022 WL 1137055, at *3 (S.D.N.Y. Apr. 18, 2022) (quoting *Perkins v. City of New York*, 2017 WL 1025987, at *2 (S.D.N.Y. Mar. 15, 2017)). With respect to Giordano, there are no allegations against, or even mention of him, in the Complaint. (*See generally* Compl.) Thus, as with the City, the Court has

---

[16] The CSEA Defendants note that CSEA received a copy of "what purported to be . . . the Complaint" just prior to filing their Reply. (CSEA Defs' Reply 2 n.1). However, particularly in view of the fact that *Plaintiff* bears the burden here, *see Holmes*, 2017 WL 3267766, at *11 n.8, 12, that development does not alter the Court's conclusion for multiple reasons. First, insofar as CSEA was served in April 2024, that was well after the ninety-day service deadline set forth in Rule 4. *See* Fed. R. Civ. P. 4(m) ("If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time.") (*See also generally* Compl. (noting that it was filed on December 18, 2023). Second, the CSEA Defendants do not specify the manner in which this purported service was effected, including how and to whom specifically it was served. And third, the CSEA Defendants assert that seventeen of the Complaint's more than eighty pages "contain computer code rather than actual text[,]" which suggests that service as to CSEA may well remain deficient. (CSEA Defs' Reply 2 n.1).

little trouble dismissing Giordano from this case. *See Shands v. Lakeland Cent. Sch. Dist.*, No. 15-CV-4260, 2017 WL 1194699, at *8 (S.D.N.Y. Mar. 30, 2017) (dismissing claims against certain individually named defendants where "there [was] not even a single allegation that any of [them] participated in the conduct giving rise to [the case]" and stating that "[t]hey are all named in the caption of the [c]omplaint, but nowhere else does [the p]laintiff describe their role").

*      *      *

In sum, for the reasons stated above, the CSEA Defendants' Motion is granted.[17]

### 3. The District Defendants' Motion

In support of their Motion, the District Defendants first argue that the § 1981 claims against them must be dismissed because that provision "does not provide a separate private right of action against state actors." (District Defs' Mem. 13 (citation omitted).)  With respect to Plaintiff's discrimination claims, the District Defendants argue that he has failed to plausibly allege that he suffered any adverse employment action or that they were motivated by any discriminatory intent. (*See id.* at 14–19.)  As to Plaintiff's retaliation claim, the District Defendants likewise assert that Plaintiff failed to plead that he suffered any adverse employment action. (*See id.* at 23–25.)  The District Defendants also press the Court to dismiss Plaintiff's

---

[17] With regard to the claims against the CSEA Defendants, it seems that, in failing to respond to the CSEA Defendants' substantive arguments against those claims, (*see* Pl's Opp'n), Plaintiff has abandoned them in any event, *see Hauschild v. U.S. Marshals Serv.*, No. 21-CV-7580, 2023 WL 2413934, at *12 (S.D.N.Y. Mar. 8, 2023) ("At the motion to dismiss stage, where review is limited to the pleadings, a plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim." (citation omitted)); *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, No. 08-CV-442, 2014 WL 4723299, at *7 (S.D.N.Y. Sept. 23, 2014) ("At the motion to dismiss stage . . . a plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim."); *cf. Jackson v. Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014) ("[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned.").

21

hostile work environment claims because he does not allege sufficiently severe and pervasive conduct to establish those claims. (*See id.* at 19–22.)

With regard to Plaintiff's state law claims, the District Defendants argue that those claims must be dismissed because Plaintiff did not comply with § 50-h of the New York General Obligations Law and § 3813 of the New York Education Law insofar as he did not allow the District Defendants to take his examination prior to filing this Action. (*See id.* at 26–28.) And finally, the District Defendants contend that Verdile's comments to McNair were not defamatory. (*See id.* at 28.)

The Court will address the CSEA Defendants' arguments only as necessary to resolve their Motion.

### a. Claims Under § 1981 Generally

The District Defendants argue that Plaintiff improperly brings claims against state actors under § 1981. (District Defs' Mem. 13.) "[Section] 1981 does not provide a separate private right of action against state actors," as it is § 1983 that provides the "exclusive federal remedy" for such claims. *Duplan v. City of New York*, 888 F.3d 612, 619, 621 (2d Cir. 2018) (emphasis omitted); *see also Gonzalez v. City of New York*, 377 F. Supp. 3d 273, 285 (S.D.N.Y. 2019) (holding that *Duplan* applies not only to claims against the municipality itself but also against individual municipal defendants). Accordingly, Plaintiff cannot bring his "federal claims against [state actors] directly under [§] 1981" instead, he must locate his "right to relief for the [state actors'] alleged [§] 1981 violations in [§] 1983, which provides a cause of action for statutory violations committed under color of state law." *Richardson v. City of New York*, No. 17-CV-9447, 2018 WL 4682224, at *11 (S.D.N.Y. Sept. 28, 2018). Accordingly, the Court considers Plaintiff's § 1981 claims under § 1983, as other courts have done in the wake of *Duplan*. *See Duplan,* 888 F.3d at 616 (construing plaintiff's § 1981 claims against state actors as brought

22

under § 1983); *see also Quinones v. City of Binghamton*, 997 F.3d 461, 468 n.4 (2d Cir. 2021)

("We note that a plaintiff may not sue a municipal defendant under section 1981 alone, and

instead must raise any section 1981 claims through a section 1983 action.  But plaintiffs need not

invoke § 1983 expressly in order to state a claim, so long as they plead facts that plausibly

indicate liability.  This Court has thus construed a plaintiff's claims against a municipality,

incorrectly brought under section 1981 alone, as § 1983 claims." (citation and quotation marks

omitted)); *In re N.Y.C. Dep't of Educ.*, No. 15-CV-7150, 2019 WL 1433163, at *5 (S.D.N.Y.

Mar. 29, 2019) ("Following the Second Circuit's approach in *Duplan*, the Court will construe the

§ 1981 claims as causes of action brought under § 1983 and discuss whether the claims can

survive pursuant to § 1983 caselaw.").

### b.  Discrimination Under § 1983

Next, the Court considers Plaintiff's federal discrimination claim.  (*See* Comp. ¶¶ 29–35.)

Claims of discrimination under § 1983 are analyzed under the familiar three-part framework set

forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Littlejohn v. City of New

York*, 795 F.3d 297, 312 (2d Cir. 2015) ("[Plaintiff's] disparate treatment claim under . . . § 1981,

and § 1983 is subject to the burden shifting evidentiary framework set forth in *McDonnell

Douglas*.") (citing *Ruiz v. County of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010)); *accord

Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 449 (S.D.N.Y. 2023);

*see also Zheng-Smith v. Nassau Health Care Corp.*, 486 F. Supp. 3d 611, 620–21 (E.D.N.Y.

2020) ("Claims for race and national origin discrimination under . . . § 1981 are [] analyzed using

the burden-shifting framework established by the Supreme Court in *McDonnell Douglas*[.]"),

*aff'd*, 2021 WL 4097316 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 1675 (2022).

Under the *McDonnell Douglas* framework, a plaintiff must first show that "(1) []he is a

member of a protected class; (2) []he is qualified for [his] position; (3) []he suffered an adverse

23

employment action; and (4) the circumstances give rise to an inference of discrimination."
*Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (citing *McDonnell Douglas*, 411
U.S. at 802) (setting forth these elements in the Title VII context); *see also Kirkland-Hudson*,
665 F. Supp. 3d at 449 (same).[18]  Further, "for a § 1983 discrimination claim to survive a . . .
motion to dismiss, a plaintiff must plausibly allege a claim under the same standards applicable
to a Title VII claim—and that the adverse action was taken by someone acting under color of
state law."  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 89 (2d Cir. 2015) (quotation
marks omitted).[19]  If a plaintiff successfully does so, the burden then shifts to the employer to
demonstrate a legitimate, non-discriminatory purpose for the adverse employment action.  *See
McDonnell Douglas*, 411 U.S. at 802.  Finally, if an employer satisfies this requirement, the
burden shifts back to the employee to demonstrate, by a preponderance of the evidence, that the
non-discriminatory reason was actually a pretext for discrimination.  *See id*. 804–05; *see also
Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 136 (2d Cir. 2016) (articulating
the three-step *McDonnell Douglas* framework).

Because "a plaintiff is not required to plead a prima facie case under *McDonnell
Douglas*, at least as the test was originally formulated, to defeat a motion to dismiss," *Vega*, 801
F.3d at 84 (italics omitted), the Court need only concern itself with the first phase of the
*McDonnell Douglas* framework, *see Munoz-Nagel v. Guess, Inc.*, No. 12-CV-1312, 2013 WL

---

[18] Discrimination claims under § 1983 are subject to the same standard as such claims under Title VII.  *See, e.g.*, *Valdez v. Enlarged City Sch. Dist. of Middletown*, No. 21-CV-9261, 2023 WL 2665561, at *6 (S.D.N.Y. Mar. 28, 2023) ("Claims of discrimination under § 1981 (pursuant to § 1983) are analyzed under the same framework as Title VII claims.").

[19] Here—except as otherwise indicated below—the District Defendants' actions are "under color of state law as [they] are employees of a public school [district]" and, indeed, the District itself.  *Vega*, 801 F.3d at 89.

24

6068597, at *1 (S.D.N.Y. Nov. 15, 2013) ("[A] [p]laintiff need not make out a prima facie case

at the pleading stage, and may withstand a motion to dismiss by providing a short and plain

statement of the claim that shows that []he is entitled to relief that gives [the defendant] fair

notice of the . . . discrimination claim and the grounds upon which it rests." (italics and citation

omitted)).  "Although [the p]laintiff need not allege facts sufficient to make out a prima facie

case for any of [his] discrimination claims in [his c]omplaint, the elements thereof provide an

outline of what is necessary to render her claims for relief plausible." *Sommersett v. City of New*

*York*, No. 09-CV-5916, 2011 WL 2565301, at *5 (S.D.N.Y. June 28, 2011) (italics omitted); *see*

*also Littlejohn*, 795 F.3d at 311 & n.9 (noting that while a plaintiff need not plead a prima facie

case of discrimination, "the elements of a prima facie case may be used as a prism to shed light

upon the plausibility of the claim" (quotation marks and citation omitted)); *Ndremizara v. Swiss*

*Re Am. Holding Corp.*, 93 F. Supp. 3d 301, 312 (S.D.N.Y. 2015) (collecting cases); *Barker v.*

*UBS AG*, No. 09-CV-2084, 2011 WL 283993, at *5 (D. Conn. Jan. 26, 2011) ("[E]ven though

establishing a prima facie case of . . . discrimination is not necessary to survive a motion to

dismiss, courts do use the standard as a guidepost when determining whether the plaintiff has

provided the defendant with fair notice of her claim, as required by the Federal Rules of Civil

Procedure.").

     Given that the District Defendants do not dispute that Plaintiff is a member of one or

more protected classes or that he is qualified for his position, (*see generally* District Defs'

Mem.), the Court focuses its analysis on only the remaining elements of the discrimination—

adverse employment action and causation.

### i.  Adverse Employment Action

     "An adverse employment action is 'a materially adverse *change* in the terms and

conditions of employment.'" *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008)

(emphasis in original) (quoting *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d

Cir. 2004)).   The Second Circuit has instructed that:

> To be materially adverse, a change in working conditions must be more disruptive
> than a mere inconvenience or an alteration of job responsibilities.   Examples of
> such a change include termination of employment, a demotion evidenced by a
> decrease in wage or salary, a less distinguished title, a material loss of benefits,
> significantly diminished material responsibilities, or other indices unique to a
> particular situation.

*Id.* (quoting *Sanders*, 361 F.3d at 755); *see also Tolbert v. Smith*, 790 F.3d 427, 435 (2d Cir.

2015) (holding similarly).   "Moreover, while there is no exhaustive list of what constitutes an

adverse employment action, courts have also held that denial of promotion, addition of

responsibilities, involuntary transfer that entails objectively inferior working conditions, denial

of benefits, denial of a requested employment accommodation, denial of training that may lead to

promotional opportunities, and shift assignments that make a normal life difficult for the

employee, among other things, constitute adverse employment actions" under certain

circumstances.   *Potash v. Fla. Union Free Sch. Dist.*, 972 F. Supp. 2d 557, 584 (S.D.N.Y. 2013)

(quotation marks and citation omitted).

   "[A]dverse employment actions . . . must be 'more than trivial, insubstantial, or petty.'"

*Colon v. Fashion Inst. of Tech. (State Univ. of N.Y.)*, 983 F. Supp. 2d 277, 288 (S.D.N.Y. 2013)

(quoting *Williams v. Regus Mgmt. Grp., LLC*, 836 F. Supp. 2d 159, 173 (S.D.N.Y. 2011)); *see id.*

(finding that supervisor's "taking [the plaintiff's] bathroom keys, . . . insistence that she get a

mannequin on one occasion, and . . . 'talking down' to [the plaintiff]" did not constitute adverse

employment actions (alteration adopted)); *see also Abalola v. St. Luke's-Roosevelt Hosp. Ctr.*,

No. 20-CV-6199, 2022 WL 973861, at *7 (S.D.N.Y. Mar. 30, 2022) ("[The plaintiff's] claims

that [two individuals] harassed and demeaned her do not constitute adverse employment

actions."); *LeeHim v. N.Y.C. Dep't of Educ.*, No. 17-CV-3838, 2017 WL 5634128, at *4

26

(S.D.N.Y. Nov. 21, 2017) (explaining that "'petty slights,' such as shushing" and "rude and intemperate conduct" do not amount to adverse employment actions). Simply put, "[n]ot everything that makes an employee unhappy is an actionable adverse action." *Saber v. N.Y. State Dep't of Fin. Servs.*, No. 15-CV-5944, 2017 WL 985889, at *10 (S.D.N.Y. Mar. 10, 2017) (quoting *Self v. Dep't of Educ. of the City of N.Y.*, 844 F. Supp. 2d 428, 435 (S.D.N.Y. 2012)).

In support of his discrimination claims, between the Complaint and his Opposition, Plaintiff identifies the following actions as the adverse employment actions that he suffered: (1) being transferred from SAS to the High School; (2) being moved from the day shift to the night shift; (3) being sexually harassed by Verdile; (4) facing fabricated complaints about two women being uncomfortable around him; (5) having his complaints about discrimination ignored; (6) "being treated differently about smoking cigarettes when a white woman supervisor was allowed to smoke with no ramifications"; and (7) "being told 'not to be seen.'" (Pl's Opp'n 18–19; *see also* Compl. ¶ 33 (subparagraphs A–F, ECF pages 42–44).)[20]

As an initial matter, the Court notes that Plaintiff's assertions that he was "treated differently about smoking cigarettes" and "told 'not to be seen,'" (Pl's Opp'n 18–19), do not appear anywhere in the Complaint, (*see generally* Compl.). Thus, because Plaintiff "cannot

---

[20] Although Plaintiff does allege, in a conclusory fashion, that the District Defendants "ignore[ed] or fail[ed] to consider him for promotion or interview him in connection with his applications for posted promotion[] opportunities," (*see* Compl. ¶ 26), the Court notes that "a plaintiff must 'allege that she or he applied for a *specific* position or positions and was rejected therefrom, rather than merely assert[] that on several occasions she or he generally requested promotion.'" *Smith v. City of New York*, 385 F. Supp. 3d 323, 337 (S.D.N.Y. 2019) (quoting *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir. 1998)); *see also Barrett v. Forest Labs., Inc.*, 39 F. Supp. 3d 407, 442 (S.D.N.Y. 2014) (dismissing claims where the plaintiffs failed to allege "that they were interested in a promotion or that there was an open position to which they could have (or would have) applied"). Plaintiff's threadbare allegation regarding missed opportunities for a promotion, therefore, is not enough to survive the District Defendants' Motion.

amend [his C]omplaint through a brief," he cannot rely upon those purported adverse

employment actions to overcome the District Defendants' Motion. *Cortese v. Skanska Koch,*

*Inc.*, No. 20-CV-1632, 2021 WL 429971, at *18 n.4 (S.D.N.Y. Feb. 8, 2021); *see also Wright v.*

*Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (finding that a plaintiff may not amend its

complaint through its opposition brief).

      With regard to Plaintiff's transfer from SAS to the High School, the Court agrees with the

District Defendants' argument that, as alleged, Plaintiff's transfer did not amount to a materially

adverse employment action. (*See* District Defs' Mem. 14–15.)  Put simply, "a transfer to a less

convenient location [does not] amount to an adverse action." *Tringone v. N.Y. State Off. of*

*Mental Health*, No. 18-CV-1896, 2021 WL 5324897, at *11 (E.D.N.Y. Nov. 15, 2021)

("[C]ourts in this Circuit have generally declined to find that transfers (or denials of transfers)

amount to adverse employment actions[] . . . where the action results merely in an

inconvenience, such as an increased commute or unfavorable hours."); *accord Taylor v. N.Y.C.*

*Dep't of Educ.*, No. 11-CV-3582, 2012 WL 5989874, at *10 (E.D.N.Y. Nov. 30, 2012)

(collecting cases).  Here, Plaintiff provides no allegation in the Complaint explaining *why* his

transfer from SAS to the High School was anything more than a mere inconvenience, and he

certainly does not allege that he was demoted in any sense or had his salary or benefits cut in any

way. (*See generally* Compl.)  *See also Johnson v. Eastchester Union Free Sch. Dist.*, 211 F.

Supp. 2d 514, 518 (S.D.N.Y. 2002) ("In cases such as this one, which involves an involuntary

transfer, the 'key inquiry' is 'whether the transfer constitutes a negative employment action

tantamount to a demotion.'" (quoting *Patrolmen's Benevolent Ass'n v. City of N.Y.*, 74 F. Supp.

2d 321, 335 (S.D.N.Y.1999)).  Thus, the Court concludes that, as alleged, Plaintiff's transfer did

not amount to a materially adverse employment action. *See Ray v. N.Y. State Ins. Fund*, No. 16-

CV-2895, 2018 WL 3475467, at *11 (S.D.N.Y. July 18, 2018) ("[T]he mere inconvenience of working from a different location does not, without some other impact, rise to the level of an adverse employment action."); *Smalls v. Allstate Ins. Co.*, 396 F. Supp. 2d 364, 371 (S.D.N.Y. 2005) ("It is well-settled that a lateral transfer does not rise to the level of an adverse employment action as a matter of law."); *Ifill v. United Parcel Serv.*, No. 04-CV-5963, 2005 WL 736151, at * (S.D.N.Y. Mar. 29, 2005) ("[A] lateral transfer, even if imposed on an employee involuntarily, does not constitute an adverse employment action unless it is accompanied by some other material adverse change in conditions, such as a reduction in pay or status."); *see also Das v. Consol. Sch. Dist. of New Britain*, 369 F. App'x 186, 189 (2d Cir. 2010) (summary order) (concluding that a teacher's transfer from permanent classroom teacher in middle school to floating teacher in high school was not an adverse employment action, as "such a disparity in working conditions does not constitute a materially adverse change in the terms and conditions of employment" (quotation marks omitted)); *cf. Cayemittes v. City of N.Y. Dep't of Hous. Pres. and Dev.*, 10–CV–8486, 2011 WL 7178736, at *8 (S.D.N.Y. Nov. 10, 2011) ("Plaintiff's transfer . . . *which he contends was a demotion*, is, at least facially, a sufficiently adverse action that would dissuade a reasonable employee from exercising his right to protest discrimination."), *report and recommendation adopted*, 2012 WL 406915 (S.D.N.Y. Feb. 9, 2012).

Likewise, the Court agrees with the District Defendants' contention that Plaintiff has failed to plausibly allege that his transfer from the day shift to the night shift constituted a materially adverse employment action.  (*See* District Defs' Mem. 14–15.)  Courts have consistently held that "[a] change in schedule, without more, is not an adverse employment action for purposes of a discrimination claim."  *Arroyo-Horne v. City of New York*, No. 16-CV-3857, 2018 WL 4259866, at *11 (E.D.N.Y. Sept. 5, 2018); *see also Smalls*, 396 F. Supp. 2d at

371 ("[Neither] receiving [an] unfavorable schedule[] [n]or work assignment[] . . . rise[s] to the level of adverse employment action[] because they do not have a material impact on the terms and conditions of [the] [p]laintiff's employment." (citation omitted)).  Given that he has failed to allege anything beyond the fact that he was changed from the day shift to the night shift, (*see generally* Compl.), Plaintiff has failed to plausibly allege that this shift change constituted a materially adverse employment action, *see Linell v. N.Y.C. Dep't of Educ.*, No. 15-CV-5085, 2018 WL 1611370, at *6 (E.D.N.Y. Mar. 30, 2018) ("[W]here assignments fall within the duties of a plaintiff's position, receiving unfavorable schedules . . . does not, without more, rise to the level of an adverse employment action." (quoting *Johnson v. Long Island Univ.*, 58 F. Supp. 3d 211, 224 (E.D.N.Y. 2014)); *see also Kurtanidze v. Mizuho Bank, Ltd.*, No. 23-CV-8716, 2024 WL 1117180, at *7 (S.D.N.Y. Mar. 13, 2024) (same); *Henry v. N.Y.C. Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 404–07 (S.D.N.Y. 2014) (holding that the employee's allegations that the defendants, among other things, gave her undesirable assignments and shifts, did not rise to the level of an adverse employment action); *Bright v. LeMoyne Coll.*, 306 F. Supp. 2d 244, 254 (N.D.N.Y.2004) (holding that being given a different shift than the one requested is not an adverse employment action).[21]

Plaintiff also argues that he was subjected to adverse employment action when Verdile sexually harassed him.  (*See* Pl's Opp'n 18.)  As alleged, this harassment consisted, in its entirety, of Verdile telling Plaintiff—on one occasion, while at work—"about her sex life and the size of one of their co-worker[']s private parts." (Compl. ¶ 22.)  The Court concludes that these

---

[21] Given that "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" do not suffice to survive motions to dismiss, *Iqbal*, 556 U.S. at 678, Plaintiff's conclusory allegations that he was "harass[ed]" and "bull[ied] into moving schools and changing shifts do not change the Court's analysis, (*see* Compl. ¶ 33 (subparagraph D, ECF page 43)).

inappropriate, but apparently one-off, comments do not constitute adverse employment action. To start, inappropriate or negative comments "are not, standing alone, adverse employment actions, because mere comments do not materially affect employment." *Phillip v. Dep't of Sanitation*, No. 16-CV-2412, 2019 WL 1004588, at *9 (E.D.N.Y. Feb. 28, 2019) (quoting *Teachout v. N.Y.C. Dep't of Educ.*, No. 04-CV-945, 2006 WL 452022, at *13 (S.D.N.Y. Feb. 22, 2006)); *see also id.* ("[Negative] or otherwise insulting statements are hardly even actions, let alone adverse actions." (citation omitted)). Further, [o]nly in limited circumstances does a single, acute incident of abuse qualify as an adverse employment action." *Mathirampuzha*, 548 F.3d at 78–79. Specifically, an "incident [must] constitute an 'intolerable alteration' of the plaintiff's working conditions, so as to substantially interfere with or impair the [plaintiff's] ability to do his job." *Id.* (citations omitted). Conversely, mere "'[u]nprofessional and boorish' treatment does *not* amount to an adverse employment action." *Phillip*, 2019 WL 1004588, at *9 (emphasis added) (quoting *Mathirampuzha*, 548 F.3d at 78); *cf. Freud v. N.Y.C. Dep't of Educ.*, No. 21-CV-2281, 2022 WL 889213, at *11 (S.D.N.Y. Mar. 25, 2022) ("Comments that 'engender[] offensive feelings in an employee would not affect the conditions of employment to a sufficiently significant degree to violate Title VII.'" (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)), *aff'd*, No. 22-879, 2023 WL 3103588 (2d Cir. Apr. 27, 2023) (summary order). Here, even accepting that she was his supervisor, Plaintiff has failed to plausibly allege that Verdile's comments constituted adverse employment action because he does not allege, in any way, that her comments "affected [his] position, pay, responsibilities, or ability to do his job." *Sullivan v. N.Y.C. Dep't of Investigation*, 163 F. Supp. 3d 89, 98 (S.D.N.Y. 2016); *see also Mathirampuzha*, 548 F.3d at 70, 73, 78–79 (holding that a supervisor did not

subject the plaintiff to adverse employment action where the supervisor "grabbed the plaintiff's arm, punched him in the shoulder and the chest, spit in his face, and poked him in the eye").[22]

The District Defendants do not address the remaining two alleged adverse employment actions—that they "[made] up lies about [two] females being uncomfortable around him" and "ignor[ed] his repeated written and oral complaints about discrimination, except to increase it[.]" (Compl. ¶ 33 (subparagraphs D–E, ECF page 43); *see also generally* District Defs' Mem.)  As to the allegedly fabricated complaints, the Court recognizes that, although "negative reports or evaluations alone are generally not adverse employment actions, . . . they *can* be considered adverse employment actions *when they give rise to material adverse changes in work conditions*." *Dasrath v. Stony Brook Univ. Med. Ctr.*, No. 12-CV-1484, 2015 WL 1223797, at *11 (E.D.N.Y. Mar. 17, 2015) (emphases added) (quoting *Bowen–Hooks v. City of New York*, 13 F. Supp. 3d 179, 217 (E.D.N.Y. 2014)).  That is true even where the negative report or evaluation is alleged to have been fabricated.  *See id.*  Here, however, the only changes in work conditions that the women's complaints allegedly led to were Plaintiff's transfer to the High School and change to the night shift, which, as noted, were not material adverse changes in

---

[22] The Court also notes that it is not entirely clear that Verdile was acting under color of law as required for purposes of Plaintiff's § 1983 claim.  Although she was at work when she spoke to Plaintiff about her sex life, "[t]he fact that a defendant is on-duty is not sufficient [on its own] to show that he or she acted under color of law."  *Isaacs v. City of New York*, No. 10-CV-4177, 2012 WL 314870, at *2 (E.D.N.Y. Feb. 1, 2012).  Instead, "courts look to the nature of the [defendant's] act, not simply his [or her] duty status."  *Pitchell v. Callan*, 13 F.3d 545, 548 (2d Cir. 1994); *see also Claudio v. Sawyer*, 675 F. Supp. 2d 403, 408 (S.D.N.Y. 2009) ("The court is to look at the totality of the circumstances surrounding the [defendant's] acts, with attention to the nature of [their] acts (rather than simply [their] duty status) and the relationship of that conduct to the [defendant's] official duties." (quotation marks omitted)), *aff'd*, 409 F. App'x 464 (2d Cir. 2011) (summary order).  Given the dearth of factual allegations regarding this incident with Verdile, the Court cannot say that Plaintiff has established that Verdile was "exercis[ing] power 'possessed by virtue of state law and made possible only because [she was] clothed with the authority of state law.'"  *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)) (defining the color of law requirement).

Plaintiff's work conditions as alleged. (*See* Compl. ¶ 22.) Thus, Plaintiff cannot rely on the purported fabrication of complaints against him as an adverse employment action.

Finally, the Court considers Plaintiff's allegation that the District Defendants "ignor[ed] his repeated written and oral complaints about discrimination, except to increase it[.]" (*Id.* ¶ 33 (subparagraphs E, ECF page 43).) Putting aside the fact that it is unclear when (and to whom) Plaintiff lodged his complaints, not to mention what his complaints specifically concerned, "an employer's failure to investigate an employee's claim [of discrimination] does not automatically create an adverse employment action for purposes of stating a prima facie case of employment discrimination." *McGrath v. Arroyo*, No. 17-CV-1461, 2024 WL 531251, at *3 (E.D.N.Y. Feb. 9, 2024) (italics omitted). Indeed, courts have consistently held that "an employer's failure to investigate discrimination claims is *not* an adverse employment action." *Hong Yin v. N. Shore LIJ Health Sys.*, 20 F. Supp. 3d 359, 374 (E.D.N.Y. 2014) (citing, inter alia, *Price v. Cushman & Wakefield, Inc.*, 808 F. Supp. 2d 670, 690 (S.D.N.Y. 2011)); *see also Petyan v. N.Y.C. L. Dep't*, No. 14-CV-1434, 2015 WL 1855961, at *11 (S.D.N.Y. Apr. 23, 2015) ("Even assuming that the investigation [into alleged discrimination] was insufficient, such conduct cannot be characterized as an adverse employment action.") (collecting cases), *report and recommendation adopted*, 2015 WL 4104841 (S.D.N.Y. July 2, 2015); *Hayes v. Kerik*, 414 F. Supp. 2d 193, 203 (E.D.N.Y. 2006) (concluding—at the summary judgment stage—that a defendant's "failure to properly investigate [a] complaint of discrimination[ did] not constitute adverse employment action[]"). In light of that clear caselaw, Plaintiff's assertion that his complaints about discrimination were ignored plainly fails to plausibly allege adverse employment action.

In sum, the Court concludes that—in connection with his federal discrimination claim—Plaintiff has not plausibly alleged that he suffered any adverse employment action.

### ii. Causation

Even if Plaintiff *had* plausibly alleged an adverse employment action, his federal discrimination claim would still fail, because he has likewise failed to plausibly plead facts giving rise to an inference of discriminatory motive on the part of the District Defendants. "[A]n inference of discriminatory motivation may be supported directly, such as by statements that an adverse employment action was related to plaintiff's protected class, . . . or indirectly by an allegation that plaintiff was treated different from and less favorably than similarly situated peers." *Boncoeur v. Haverstraw-Stony Point Cent. Sch. Dist.*, No. 20-CV-10923, 2022 WL 845770, at *7 (S.D.N.Y. Mar. 22, 2022) (quoting *Roache v. Long Island R.R.*, 487 F. Supp. 3d 154, 172 (E.D.N.Y. 2020)); *see also Vega*, 801 F.3d at 87 ("A plaintiff can meet that burden through direct evidence of intent to discriminate, or by indirectly showing circumstances giving rise to an inference of discrimination." (citations omitted)); *Detouche v. JTR Transp. Corp.*, No. 17-CV-7719, 2020 WL 7364116, at *10 (S.D.N.Y. Dec. 14, 2020) ("The necessary inference may be derived from a variety of circumstances, including the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group[.]" (quotation marks omitted)).[23] Alternatively, "[the] plaintiff also may create a

---

[23] In his Opposition, Plaintiff makes the bold assertion that, under *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511–12 (2002), discrimination plaintiffs need only "use the word discrimination" to raise an inference of discriminatory intent. (Pl's Opp'n 11–12.) *Swierkiewicz*, however, says no such thing. *See Swierkiewicz*, 534 U.S. at 511–12; *see also Woods v. City of Greensboro*, 855 F.3d 639, 646–47 (4th Cir. 2017) (explaining that, in *Swierkiewicz*, the Supreme Court relied upon the "notice pleading" standard articulated in *Conley v. Gibson*, 355 U.S. 41, 47 (1957), but that the *Conley* standard was abrogated in the wake of *Twombly* and *Iqbal*). Indeed, Plaintiff's assertion flies in the face of the Second Circuit's instruction that "the facts alleged in the complaint must provide at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Vega*, 801 F.3d at 85; *see also Langston v. UFCW Loc. 919*, No. 19-CV-841, 2019 WL 6839336, at *3 (D. Conn. Dec. 16, 2019) ("[I]t is not enough for a plaintiff to conclusorily allege that she was the victim of discrimination without

'mosaic' of intentional discrimination by identifying 'bits and pieces of evidence' that together give rise to an inference of discrimination." *Stinnett v. Delta Air Lines, Inc.*, 278 F. Supp. 3d 599, 611–12 (E.D.N.Y. 2017) (quoting *Vega*, 801 F.3d at 87). "Clearing this low pleading threshold 'entitles the plaintiff to the temporary presumption of *McDonnell Douglas* until the defendant furnishes its asserted reasons for its action against the plaintiff,'" *Roache,* 487 F. Supp. 3d at 172 (quoting *Doe v. Columbia Univ.*, 831 F.3d 46, 55 (2d Cir. 2016)), "the evaluation of which is more appropriately considered at summary judgment or at trial," *id.* (citing *Levy v. Legal Aid Soc'y*, 408 F. Supp. 3d 209, 216 (E.D.N.Y. 2019)). But, notably, "under § 1981, to 'prevail, a plaintiff must initially plead and ultimately prove that, *but for* [their protected characteristic or characteristics], [he] would not have suffered the loss of a legally protected right.'" *Kirkland-Hudson*, 665 F. Supp. 3d at 454 (emphasis added) (quoting *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020)).

Here, the Complaint does not allege any sort of direct discrimination against Plaintiff, and Plaintiff does not argue otherwise in his Opposition. (*See generally* Compl.; Pl's Opp'n.) Plaintiff does allege that the District Defendants' decisions to transfer him to the High School and change him to the night shift were part of "a [racist] pattern" Defendants "have with minorities and immigrants that work for the [D]istrict." (Compl. ¶ 22.)[24] Relatedly, Plaintiff asserts that that he had "a co[-]worker that went through the same thing [as him] and it wasn't

---

alleging facts suggesting this to be so."); *Maines v. Last Chance Funding, Inc.*, No. 17-CV-5453, 2018 WL 4558408, at *18 (E.D.N.Y. Sept. 21, 2018) ("The fact that the [p]laintiff alleges that she used the words discrimination and harassment in her complaints is not enough to state a claim for retaliation." (quoting *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, No. 11-CV-5035, 2012 WL 3241402, at *12 (E.D.N.Y. Aug. 3, 2012), *aff'd*, 716 F.3d 10 (2d Cir. 2013))), *amended*, 2018 WL 4610898 (E.D.N.Y. Sept. 25, 2018).

[24] Drawing all reasonable inferences in Plaintiff's favor, the Court will construe this allegation against unspecified "Defendants" as being leveled against the District Defendants.

until he had a lawyer on the case that [unidentified individuals and/or entities] backed off and fixed the situation." (*Id.*) As to the District Defendants' purported "pattern" of alleged racist treatment of employees who are "minorities and immigrants," such conclusory allegations simply "cannot 'suffice to defeat a motion to dismiss.'" *Spires v. MetLife Grp., Inc.*, No. 18-CV-4464, 2019 WL 4464393, at *12 (S.D.N.Y. Sept. 18, 2019) (quoting *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006)) (concluding that the plaintiff's allegation that the defendants paid "[B]lack employee less than a white employee [as] part of a pattern and practice of treating [B]lack employees less favorably than white employees" was "entirely conclusory" and therefore insufficient to survive a motion to dismiss); *see LaSalle v. City of New York*, 13-CV-5109, 2015 WL 1442376, at *6 (S.D.N.Y. Mar. 30, 2015) (dismissing a § 1981 claim because the allegation that the defendants "engage[d] in a pattern and practice of discrimination against Hispanics and other minority officers" was wholly conclusory); *Hines v. F.J.C. Sec. Co.*, No. 96-CV-2632, 1998 WL 60967, at *3 (S.D.N.Y. Feb. 13, 1998) (concluding that "[t]he bare assertion that [the d]efendants denied [the p]laintiff access to the government building" because of the plaintiff's race, "without any specific allegation of a causal link between the [d]efendants' conduct and the [p]laintiff's race, [was] too conclusory to withstand a motion to dismiss"); *see also Stinson v. Morningstar Credit Ratings, LLC*, No. 22-CV-6164, 2024 WL 3848515, at *14 (S.D.N.Y. Aug. 16, 2024) (finding that the plaintiff could not "create an inference of age discrimination from her otherwise conclusory assertion that [the defendant] had a pattern of targeting older workers"). And given that Plaintiff has failed to plead specific facts about his co-worker that "went through the same thing [as him]"—including his position, race, age, and what the "thing" he went through was—the Court likewise concludes that that allegation does nothing to raise any inference of discriminatory intent on the part of the District

Defendants.  *See Iqbal*, 556 U.S. at 678 (explaining that "unadorned[] . . . accusation[s]" and "naked assertions devoid of further factual enhancement" are insufficient to state a claim under Rule 8 of the Federal Rules of Civil Procedure).

It appears that Plaintiff attempts to raise an inference of discrimination by asserting that the District Defendants "creat[ed] other worse terms and conditions of employment [for him] as compared to similarly s[i]tuated Caucasian and[/]or male/female employees and employees under 40 [years old]." (Compl. ¶ 26.)  Of course, the Court recognizes that "a plaintiff can raise an inference of discrimination by demonstrating the disparate treatment of at least one similarly situated employee outside his protected group and sufficient facts from which it may reasonably be inferred that 'the plaintiff's and comparator's circumstances . . . bear a reasonably close resemblance.'"  *Sutter v. Dibello*, No. 18-CV-817, 2021 WL 930459, at *21 (E.D.N.Y. Mar. 10, 2021) (quoting *Hu v. City of New York*, 927 F.3d 81, 96–97 (2d Cir. 2019)).  The alleged comparator, however, must be similar enough "to support at least a minimal inference that the difference of treatment may be attributable to discrimination."  *McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001); *see also Kirkland-Hudson,* 665 F. Supp. 3d at 454 (same); *Cardwell v. Davis Polk & Wardwell LLP*, No. 19-CV-10256, 2020 WL 6274826, at *22 (S.D.N.Y. Oct. 24, 2020) (same).  But beyond extraordinarily vague allegations, Plaintiff provides *no* specific information regarding his alleged comparators suggesting that they were in any way similarly situated as compared to Plaintiff, such as their job title, actual gender, or age.  (*See generally* Compl.)  On this record, Plaintiff simply has not "nudged [his] claim[] across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570; *see Alvarado v. United Hospice, Inc.*, 631 F. Supp. 3d 89, 115 (S.D.N.Y. 2022) (explaining that a plaintiff "must actually identify a similarly situated employee; vague references to 'comparable [w]hite supervisors' are not

sufficient") ; *Palmer v. Shchegol*, 406 F. Supp. 3d 224, 232 (E.D.N.Y. 2016) (dismissing discrimination claim even where the plaintiff identified five comparators, because her complaint and opposition were "devoid of any facts to suggest she was discriminated against due to her national origin or skin tone."); *see also Blige v. City Univ. of N.Y.*, No. 15-CV-8873, 2017 WL 498580, at *9 (S.D.N.Y. Jan. 19, 2017) ("Numerous courts within the Second Circuit have granted motions to dismiss disparate treatment claims where the complaint was entirely devoid of any details regarding the purported comparators, e.g., who they are, what their positions or responsibilities were at the company, how their conduct compared to [the] plaintiffs'[,] or how they were treated differently by [the] defendants." (alteration adopted) (italics, quotation marks, and citation omitted)), *report and recommendation adopted*, 2017 WL 1064716 (S.D.N.Y. Mar. 21, 2017); *Mesias v. Cravath, Swaine & Moore LLP*, 106 F. Supp. 3d 431, 437 (S.D.N.Y. 2015) (dismissing a plaintiff's claim for failing to plausibly allege an inference of discrimination when she provided no facts supporting an indication that she was "similarly situated" to those to whom she compared herself).

Beyond the foregoing allegations, Plaintiff does nothing more than baldly assert that he was subject to "discrimination" by the District Defendants.  (*See, e.g.*, Compl. ¶¶ 3, 25–26, 30.) But those are the precise sort of "naked assertions devoid of further factual enhancement" that the Supreme Court instructed are *not* enough to survive a motion to dismiss under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678; *see also id*. at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with *nothing more than conclusions*." (emphasis added)); *Rivera-Powell v. N.Y.C. Bd. of Elections*, 470 F.3d 458, 470 (2d Cir. 2006) ("[C]onclusory allegation[s] of discrimination . . . without evidentiary support or allegations of particularized incidents, do[]

not state a valid claim and so cannot withstand a motion to dismiss.").  Moreover, the Court emphasizes that a plaintiff's "feelings and perceptions of being discriminated against are not evidence of discrimination." *Brodt v. City of New York*, 4 F. Supp. 3d 562, 568 (S.D.N.Y. 2014) (quoting *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 456 (2d Cir. 1999) (alterations and quotation marks omitted)); *see also Bentley, Jr. v. Mobil Gas Station*, 599 F. App'x 395, 396 (2d Cir. 2015) (summary order) (concluding in the context of a Section 1981 discrimination claim that "[a] plaintiff's naked allegation that the defendant acted based on the plaintiff's race and color is too conclusory to survive a motion to dismiss").  Indeed, "without sufficient facts, even the most sincerely held beliefs [of discrimination] do not comprise a sufficient basis for withstanding a 12(b)(6) attack." *Williams v. Wellness Medical Care, P.C.*, No. 11-CV-5566, 2013 WL 5420985, at *6 (S.D.N.Y. Sept. 27, 2013).  Plaintiff therefore "does nothing more than allege the familiar faulty syllogism: something bad happened to me at work; I am (fill in the blank with one or more protected categories); therefore, it must have happened because I am (fill in the blank with the applicable protected categor[ies])." *House v. Wackenhut Servs., Inc.*, No. 10-CV-9476, 2012 WL 4017334, at * 1 (S.D.N.Y. Aug. 20, 2012).

In sum, because he has failed to plausibly allege that he has suffered any adverse employment action and has not pled facts that raise even a minimal inference of discriminatory intent, Plaintiff's discrimination claim under § 1981 (pursuant to § 1983) is dismissed.

### c.  Retaliation Under § 1983

Turning to Plaintiff's federal retaliation claim, (*see* Compl. ¶¶ 39–43 (first)), "for a retaliation claim under § 1983 to survive a . . . a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants acted under the color of state law, (2) defendants took adverse employment action against him, (3) because he complained of or otherwise opposed

discrimination." *Vega*, 801 F.3d at 91.[25]  Once the color-of-law requirement is met, the analysis

applicable to § 1983-based retaliation claims mirrors that of the analysis under Title VII.  *See id.*

Thus, "[t]o establish a prima facie case of retaliation, the plaintiff must show that: (1) []he was

engaged in an activity protected . . . ; (2) [his] employer was aware of [his] participation in the

protected activity; (3) the employer took adverse action against [him]; and (4) a causal

connection existed between the protected activity and the adverse action." *Kirkland-Hudson*,

665 F. Supp. 3d at 459 (quotation marks and citation omitted); *see also Boncoeur*, 2022 WL

845770, at *8 (similar).  "The employee at all times bears the burden of persuasion to show

retaliatory motive." *Cox v. Onondaga Cnty. Sheriff's Dep't*, 760 F.3d 139, 145 (2d Cir. 2014)

(citation omitted).  However, "[a] plaintiff's burden at this prima facie stage is de minimis."

*Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (italics omitted); *see also*

*Kirkland-Hudson*, 665 F. Supp. 3d at 459 (same).

    Even assuming that Plaintiff can establish the first three elements required to state a

retaliation claim, the Court concludes that he has not alleged the requisite causal connection.  To

show causation, "a plaintiff must plausibly plead a connection between the [alleged adverse] act

and [her] engagement in protected activity." *Vega*, 801 F.3d at 90.  A plaintiff can demonstrate

the causal connection in one of two ways: "(1) indirectly, by showing that the protected activity

was followed closely by discriminatory treatment, or through other circumstantial evidence such

as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly,

through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon*

---

[25] Again, there is no question that the District Defendants—as public school employees—acted under color of state law.  *Vega*, 801 F.3d at 89.

*v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000); *see also Rodriguez v. Town of Ramapo*, 412 F. Supp. 3d 412, 443 (S.D.N.Y. 2019) (same).

As noted above, Plaintiff has not alleged any direct retaliatory animus. (*See generally* Compl.) He has, however, alleged that he raised certain complaints with certain Defendants concerning unspecified discriminatory treatment that those Defendants failed to address. (*See id.* ¶¶ 26, 33 (ECF page 41), 38 (subparagraph A, ECF page 47), 40, 44 (subparagraph C, ECF page 58)). But, he failed to allege *when* he raised these complaints. (*See generally id.*) "Alleging complaints [without] alleging detail about when these complaints were submitted does not establish the 'close temporal relationship' that is needed to plausibly allege causation." *Bernardi v. N.Y. State Dep't of Corr.*, No. 19-CV-11867, 2021 WL 1999159, at *12 (S.D.N.Y. May 19, 2021) (quoting *Treglia*, 313 F.3d at 720). Thus, Plaintiff's federal retaliation claim must be dismissed. *See Massaro v. Dep't of Educ. of City of N.Y.*, No. 17-CV-8191, 2018 WL 4333989, at *4 (S.D.N.Y. Sept. 11, 2018) (concluding that the plaintiff's claim that "she ha[d] been discriminated against and that the retaliation took place from August 2013 to . . . July 2016" was "insufficient as a matter of law to infer retaliatory animus from temporal proximity" (quotation marks omitted)), *aff'd in part, rev'd in part on other grounds and remanded sub nom. Massaro v. Bd. of Educ. of City Sch. Dist. of City of N.Y.*, 774 F. App'x 18 (2d Cir. 2019) (summary order); *Wang*, 51 F. Supp. 3d at 541 (dismissing the complaint where, although the plaintiff "alleged the dates on which he filed his complaints, he [did] not allege[] the dates on which [the] [d]efendants" took adverse action); *Henry*, 18 F. Supp. 3d at 412 (granting a motion to dismiss where the complaint alleged that the defendants retaliated against the plaintiff "when she complained" and "after she complained," but where it "fail[ed] to state with even a modicum of specificity when the relevant events occurred[,]" rendering the complaint's "conclusory

allegations . . . simply too vague in nature and non-specific as to time to serve as a basis for [the plaintiff's] retaliation claims" (alterations adopted) (citation and quotation marks omitted)).[26]

In short, the Court concludes that Plaintiff has failed to plausibly plead a federal retaliation claim against the District Defendants.

### d.  Hostile Work Environment Under § 1983

The Court next addresses Plaintiff's federal hostile work environment claim.  (*See* Compl. ¶¶ 37–38 (second).)  "A hostile work environment claim requires a showing [1] that the harassment was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' and [2] that a specific basis exists for imputing the objectionable conduct to the employer."  *Alfano v. Costello*, 294 F.3d 365, 373 (2d

---

[26] The Court is somewhat baffled by Plaintiff's references in his Opposition to the New York *City* Human Rights Law ("NYCHRL").  (*See* Pl's Opp'n 32, 42–44.)  As an initial matter, insofar as Plaintiff seeks to add a claim to his Complaint through his Opposition, the Court emphasizes that he simply cannot do so.  *See Cortese*, 2021 WL 429971, at *18 n.4 ("[The p]laintiffs' argument fails for the simple reason that it was not pleaded and a party cannot amend its complaint through a brief."); *see also Schulz v. Medtronic, Inc.*, No. 21-CV-414, 2022 WL 503960, at *2 (D. Conn. Feb. 18, 2022) ("[I]t is axiomatic that [a] [c]omplaint cannot be amended by the briefs in opposition to a motion to dismiss.") (quoting *Weir v. City of New York*, No. 05-CV-9268, 2008 WL 3363129, at *9 (S.D.N.Y. Aug. 11, 2008)); *Red Fort Cap., Inc. v. Guardhouse Prods. LLC*, 397 F. Supp. 3d 456, 476 (S.D.N.Y. 2019) (same).  And, on the merits, any attempt to add such a claim to the Complaint would be futile.  New York law dictates that the NYCHRL protects only a limited class of people—New York City ("NYC") residents and "those who work in [NYC,]" which is defined as "the five boroughs" in NYC's Administrative Code.  *Hoffman v. Parade Publ'ns*, 933 N.E.2d 744, 747 (N.Y. 2010) (holding that, for the NYCHRL to apply to a particular case, nonresidents must show that "the alleged discriminatory conduct had an impact within" the boundary of New York City).  The five boroughs refer to the Bronx, Brooklyn, Manhattan, Queens, and Staten Island, and, notably, do not include the City that is relevant here—i.e., Beacon.  *See* N.Y.C. Admin. Code § 2-201.  Given that Plaintiff alleges that he is a Beacon resident and that all of the events at issue occurred in or around Beacon, in Dutchess County, New York, (*see generally* Compl.), he could not state a viable claim under the NYCHRL, *see, e.g.*, *Leon v. Rockland Psychiatric Ctr.*, 232 F. Supp. 3d 420, 437 (S.D.N.Y. 2017) (dismissing an NYCHRL claim where the plaintiff neither lived nor was employed in NYC because "under the NYCHRL, the plaintiff must allege that the defendant discriminated against him within the boundaries of New York City" (alterations adopted) (citation omitted)).

Cir. 2002) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)) (setting forth these elements in the Title VII context). This standard applies to Plaintiff's § 1981 and § 1983 claims. *See Kirkland-Hudson*, 665 F. Supp. 3d at 465; *see also Cano v. SEIU Loc. 32BJ*, No. 19-CV-8810, 2021 WL 4480274, at *5 (S.D.N.Y. Sept. 30, 2021) ("Hostile work environment claims under Title VII [and] Section 1981 . . . are judged by the same standard."); *Isbell v. City of New York*, 316 F. Supp. 3d 571, 591 (S.D.N.Y. 2018) (analyzing § 1981 and § 1983 hostile work environment claims under the same standard).[27] A plaintiff must also plausibly allege "that the hostile work environment was caused by animus towards [him] as a result of [his] membership in a protected class." *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 573 (S.D.N.Y. 2011) (citation omitted); *see also Boncoeur*, 2022 WL 845770, at *10 (same). Put another way, "[i]t is 'axiomatic that mistreatment at work, whether through subjection to a hostile environment or through other means, is actionable . . . only when it occurs because of an employee's protected characteristic,' such as race or gender." *Lloyd v. Holder*, No. 11-CV-3154, 2013 WL 6667531, at *11 (S.D.N.Y. Dec. 17, 2013) (quoting *Brown v. Henderson*, 257 F.3d

---

[27] Although the Court is not assessing Plaintiff's NYSHRL-based hostile work environment claim in this subsection, it notes that "the NYSHRL was amended on October 11, 2019 to eliminate the 'severe or pervasive' requirement in favor of a more lenient standard of liability." *Mayorga v. Greenberg*, No. 22-CV-387, 2023 WL 6307994, at *8 (E.D.N.Y. Sept. 28, 2023); *see McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 68 (S.D.N.Y. 2020) (explaining that "the NYSHRL was amended to direct courts to construe the NYSHRL . . . 'liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws including those laws with provisions worded comparably to the provisions of [the NYSHRL] have been so construed'" (alteration in original) (quoting N.Y. Exec. Law § 300)). Now, plaintiffs need to show only that they were "subjected to inferior terms, conditions, or privileges of employment because of [their] membership in one or more protected categories." *Tortorici v. Bus-Tev, LLC*, No. 17-CV-7507, 2021 WL 4177209, at *13 (S.D.N.Y. Sept. 14, 2021) (emphasis added); *accord Mayorga*, 2023 WL 6307994, at *8. Thus, the District Defendants' assertion that "[h]ostile work environment claims under § 1983 and the NYSHRL employ the same standard[,]" (District Defs' Mem. 19), while true in the past, *see, e.g.*, *Tolbert*, 790 F.3d at 439, is no longer the law.

246, 252 (2d Cir. 2001)).  Further, "[a]t the motion to dismiss stage, . . . a plaintiff need only

plead facts sufficient to support the conclusion that []he was faced with harassment of such

quality or quantity that a reasonable employee would find the conditions of her employment

altered for the worse." *Kirkland-Hudson*, 665 F. Supp. 3d at 449 (quoting *Cowan v. City of

Mount Vernon*, No. 14-CV-8871, 2017 WL 1169667, at *4 (S.D.N.Y. Mar. 28, 2017)).

      The Second Circuit has held that "[p]roving the existence of a hostile work environment

involves showing both 'objective and subjective elements: the misconduct shown must be severe

or pervasive enough to create an objectively hostile or abusive work environment,' and the

victim must also subjectively perceive that environment to be abusive." *Feingold v. New York*,

366 F.3d 138, 159 (2d Cir. 2004).  In determining whether a plaintiff has plausibly alleged an

actionable hostile environment, courts must look at the "totality of the circumstances, including

'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or

humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an

employee's work performance.'" *Littlejohn*, 795 F.3d at 321 (quoting *Harris v. Forklift Sys.,

Inc.*, 510 U.S. 17, 23 (1993)).  "[I]ncidents must be more than 'episodic; they must be

sufficiently continuous and concerted in order to be deemed pervasive.'" *Alfano*, 294 F.3d at

374 (quoting *Perry*, 115 F.3d at 149).  "Isolated acts, unless very serious, do not meet the

threshold of severity or pervasiveness." *Id.*  "Hostile work environment claims are meant to

protect individuals from abuse and trauma that is severe.  They are not intended to promote or

enforce civility, gentility[,] or even decency." *Isbell*, 316 F. Supp. 3d at 591.  Importantly,

"excessive criticism and rudeness do not constitute a hostile work environment." *Ramirez v.

Temin & Co.*, No. 20-CV-6258, 2021 WL 4392303, at *8 (S.D.N.Y. Sept. 24, 2021).

Here, Plaintiff asserts that the District Defendants subjected him to a hostile work environment because they: failed to "investigat[e] and remediat[e] in a timely fashion[] Plaintiff[']s written and verbal complaints that he was experiencing ongoing severe or pervasive racial/sex and age discrimination"; failed to "disciplin[e] and/or terminat[e]" those who were allegedly discriminating against him on the basis of his race, gender, "and/or" age; and "creat[ed] false accusations . . . that females felt uncomfortable around Plaintiff." (Compl. ¶ 38 (subparagraphs A–C, ECF pages 47–49).)  However, Plaintiff pleads no facts regarding, for instance, how many complaints he submitted or how long-running the "racial/sex and age discrimination" was. (*See generally id.*)  On these vague facts, the Court cannot conclude that Plaintiff has plausibly alleged that he was subjected to "sufficiently severe or pervasive" harassment based on a protected characteristic. *Alfano*, 294 F.3d at 373; *see also Antrobus v. N.Y.C. Health & Hosps. Corp.*, No. 19-CV-7449, 2021 WL 964438, at *12 (S.D.N.Y. Mar. 15, 2021) (stating that "vague pleadings are insufficient to allege a pervasively hostile work environment" and explaining that "[w]hile [the p]laintiff references retaliatory conduct in general terms, she does not identify or describe any specific instances of such conduct, or provide the [c]ourt with any indication as to its frequency[; w]ithout such allegations, the [c]ourt is unable to determine that [the d]efendant's conduct, taken together, adds enough to the 'totality of the circumstances' to create a hostile work environment"), *aff'd*, No. 21-891, 2023 WL 6784414 (2d Cir. Oct. 13, 2023) (summary order).  And to the extent Plaintiff relies upon the bald assertion that the discrimination he was experiencing was "severe and pervasive," the Court reiterates that "formulaic recitation[s] of the elements of a cause of action *will not do*" for purposes of defeating the District Defendants' Motion. *Twombly*, 550 U.S. at 555 (emphasis added).

With respect to the "false accusations," even accepting that allegation as true, that situation arose on only one occasion. (*See* Compl. ¶ 22.) Although "a hostile work environment can [] be established through evidence of a single incident of harassment that is *extraordinarily severe*[,]" *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 723–24 (2d Cir. 2010) (emphasis added), Plaintiff has not plausibly pled that the District Defendants' purportedly made-up allegations against him were sufficiently severe let alone based on any protected classifications, *see Wimberly v. automotiveMastermind, Inc.*, No. 20-CV-2880, 2021 WL 2043623, at *5 (S.D.N.Y. May 21, 2021) (concluding that allegations that "the plaintiff was the subject of various false accusations"—including that he stole food and beverages from a hotel and refused "to leave a female co-worker's desk when asked by the co-worker to leave"—did not "rise to the requisite level of severity and pervasiveness" to establish a hostile work environment claim because "courts . . . have found that allegation of reprimands and scrutiny similar to or worse than the conduct alleged in this case do not suffice to create a hostile work environment") (collecting cases); *see also Littlejohn*, 795 F.3d at 321 (upholding the dismissal of a hostile work environment claim and concluding that allegations that the employer made negative statements about the plaintiff, was impatient and used harsh tones with the plaintiff, required the plaintiff to recreate work, wrongfully reprimanded the plaintiff, increased the plaintiff's schedule, and was sarcastic to the plaintiff, could not support a finding of a severe or pervasive hostile work environment); *Milner v. HRA Police Dep't/Agency*, No. 15-CV-6320, 2018 WL 1583675, at *7 (S.D.N.Y. Mar. 28, 2018) (holding—at the motion-to-dismiss stage—that the plaintiff's allegations that, inter alia, a defendant "attempted to have [his] subordinates fabricate negative claims against him," and that he was issued "numerous disciplinary write-ups," were "simply insufficient to raise a plausible claim for a severe or pervasive hostile work environment").

Plaintiff also contends that Verdile's comments about "her sex life and the size of one of their co-workers private parts," (Compl. ¶ 22), created a hostile work environment for him that was "permeated with sexual harassment," (*id.* ¶ 38 (subparagraph B, ECF pages 48–49); Pl's Opp'n 34, 47–48). The Court has little trouble rejecting that contention. As alleged in the Complaint, Verdile only mentioned sexual topics to Plaintiff on *one* occasion. (*See* Compl. ¶ 22.) And, notably, Plaintiff does not allege that he complained about, or even took offense to, Verdile's comments; instead, he alleges that he brought it up in order to refute the allegation that she was uncomfortable around him. (*See id.*) Even if Plaintiff was offended, such an isolated remark plainly cannot be considered to be sufficiently pervasive, particularly given that single incidents can amount to a hostile work environment only where they are "extraordinarily severe." *Alfano*, 294 F.3d at 374; *see Mormol v. Costco Wholesale Corp.*, 364 F.3d 54, 58–59 (2d Cir. 2004) (concluding that comments made by the plaintiff's manager that she could break workplace rules by having sex with him did not create a hostile work environment); *Mejia v. City of New York*, No. 17-CV-2696, 2020 WL 2837008, at *15 (E.D.N.Y. May 30, 2020) ("While the record indicates that Plaintiff was subject to more frequent comments that might be construed as discriminatory on [the] basis [of sex] (such as compliments on her physical appearance and being told that she was viewed as a 'bitch'), and, on one occasion, subjected to an unwanted sexual overture, these incidents nonetheless fail to establish an environment 'so permeated with discriminatory intimidation, ridicule, and insult[]' as to sustain a hostile work environment claim." (citation omitted) (quoting *Russo v. N.Y. Presbyterian Hosp.*, 972 F. Supp. 2d 429, 449 (E.D.N.Y. 2013))); *Geller v. N. Shore Long Island Jewish Health Sys.*, 10-CV-170, 2013 WL 5348313, at *7 (E.D.N.Y. Sept. 23, 2013) (concluding that twenty incidents, including comments about the plaintiff's breasts, drawing a penis on a whiteboard during a meeting, and one

inappropriate touching of the plaintiff's knee over a five year period were insufficient to state a hostile work environment claim); *Augustin v. Yale Club*, No. 03-CV-1924, 2006 WL 2690289, at *22 (S.D.N.Y. Sept. 15, 2006) (finding "infrequent and sporadic" remarks made over the course of five years, "insufficient, as a matter of law, for Plaintiff to maintain a hostile work environment claim"); *Trinidad v. N.Y.C. Dep't of Corr.*, 423 F. Supp. 2d 151, 167–68 (S.D.N.Y. 2006) (finding isolated incidents of supervisors calling the plaintiff a "bitch" and making sexual remarks over five years of employment insufficient to support a hostile work environment claim); *see also Perry v. Slensby*, 815 F. App'x 608, 610–11 (2d Cir. 2020) (summary order) (upholding a grant of summary judgment as to a hostile work environment claim where the defendant "approached [the plaintiff] from behind, placed his hands on [the plaintiff's] shoulders, and made sexually inappropriate remarks" because—"[w]hile distasteful"—that incident was not sufficiently continuous or severe); *Paul v. Postgraduate Ctr. for Mental Health*, 97 F. Supp. 3d 141, 168 (E.D.N.Y. 2015) (finding that a supervisors' stray remarks could not "establish the inference of discrimination necessary for a prima facie hostile-work-environment claim" (italics omitted) (citing *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998))).

Finally, the Court notes that Plaintiff has failed to establish causation—that is, that any of the conduct that he claims created a hostile environment was the result of his race, gender, or age. (*See generally* Compl.) In other words, to the extent that Plaintiff raises allegations to establish a connection between the alleged hostile environment and his protected characteristics, those allegations are wholly conclusory. Courts consistently dismiss similar cases where the plaintiff makes only conclusory allegations with regard to causation. *See Sosa v. N.Y.C. Dep't of Educ.*, 368 F. Supp. 3d 489, 516 (E.D.N.Y. 2019) (dismissing a hostile work environment claim where the plaintiff failed to make any "non-conclusory allegation[s] that suggest[ed] that the

conduct that is the basis of the hostile work environment was as a result of her race or skin color"); *Salas v. N.Y.C. Dep't of Investigation*, 298 F. Supp. 3d 676, 684 (S.D.N.Y. 2018) (dismissing a hostile work environment claim where the plaintiff "ha[d] not alleged sufficient non-conclusory facts to support her hostile-work-environment claim under Title VII."); *De La Pena v. Metro. Life Ins. Co.*, 953 F. Supp. 2d 393, 418 (E.D.N.Y. 2013) (dismissing hostile work environment claims because the plaintiff "failed to plead that a hostile work environment was created and existed because of his protected status, either race, color, or national origin" and failed to "plead a [causal] connection between his protected status and the alleged hostile work environment"), *aff'd*, 552 F. App'x 98 (2d Cir. 2014) (summary order); *see also Lucio v. N.Y.C. Dep't of Educ.*, 575 F. App'x 3, 5 (2d Cir. 2014) (summary order) (affirming dismissal of hostile work environment claims based on failure to plead facts indicating causation).

In sum, the Court concludes that Plaintiff has failed to plausibly allege that the District Defendants subjected him to a hostile work environment.

### e.  State Law Claims

Finally, the Court considers Plaintiff's remaining state-law claims.  Where a district court "has dismissed all claims over which it has original jurisdiction," it "may decline to exercise supplemental jurisdiction" over any remaining claims.  *See* 28 U.S.C. § 1367(c)(3).  "Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional values of judicial economy, convenience, fairness, and comity, in deciding whether to exercise jurisdiction."  *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (citation and quotation marks omitted); *see also Gibson v. Mount Vernon Montefiore Hosp. Exec. Dir.*, No. 22-CV-4213, 2024 WL 1217528, at *13 (S.D.N.Y. Mar. 19, 2024).  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see also Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well."); *Pitchell*, 13 F.3d at 547 ("It is axiomatic that when all federal claims are eliminated prior to trial, a court should decline to exercise jurisdiction over any remaining pendent state claims." (quotation marks omitted)); *Erie Grp. LLC v. Guayaba Cap., LLC*, 110 F. Supp. 3d 501, 511 n.68 (S.D.N.Y. 2015) (same).

The Court finds nothing that distinguishes this Action from "the usual case." *See Cohill*, 484 U.S. at 350 n.7. Plaintiff's federal claims have been dismissed, *see Dellutri v. Village of Elmsford*, 895 F. Supp. 2d 555, 575 (S.D.N.Y. 2012) (declining to exercise supplemental jurisdiction where "th[e] case remains in its initial stages, and the [p]arties have not yet proceeded to discovery"); *Middleton v. United States*, No. 10-CV-6057, 2012 WL 394559, at *1 (E.D.N.Y. Feb. 7, 2012) (declining to exercise supplemental jurisdiction because no federal claims survived a motion to dismiss), and none of the factors that the Supreme Court enunciated in *Cohill*—"judicial economy, convenience, fairness, [or] comity"—counsels against such dismissal, 484 U.S. at 350 n.7. Thus, Plaintiff's remaining state-law claims are dismissed without prejudice.

## III. Conclusion

For the foregoing reasons, Defendant's Motion is granted. Because this is the first adjudication of Plaintiff's claims on the merits, the dismissal of those claims is without prejudice.[28] If Plaintiff wishes to file an amended complaint alleging additional facts and

---

[28] Notwithstanding Defendants' arguments to the contrary, (*see, e.g.*, City Mem. 6 (asserting that the Court should dismiss the Complaint with prejudice); CSEA Defs' Mem. 19 (same); District Defs' Mem. 28 (same)), the Court is not convinced that "the flaws in [the Complaint] are incurable," *Kling v. World Health Org.*, 532 F. Supp. 3d 141, 154 (S.D.N.Y. 2021) (quoting *Fort Worth Emps.' Ret. Fund v. Biovail Corp.*, 615 F. Supp. 2d 218, 233 (S.D.N.Y. 2009)). However, Plaintiff is reminded that any allegations added in an amended

otherwise addressing the deficiencies identified above, Plaintiff must do so within thirty days of the date of this Opinion & Order.  There will be no extensions.  Plaintiff is further advised that any amended complaint will completely replace, not supplement, the now-dismissed Complaint. Any amended complaint must therefore contain all of the claims, defendants, and factual allegations that Plaintiff wishes the Court to consider.  If Plaintiff fails to timely file an amended complaint, the dismissed claims may be dismissed with prejudice.

The Clerk of Court is respectfully directed to terminate the pending Motions. (Dkt. Nos. 23, 26–27.)

SO ORDERED.

Dated:    September 23, 2024
          White Plains, New York

_____
KENNETH M. KARAS
United States District Judge

---

complaint must be made in good faith.  *See* Fed. R. Civ. P. 11(b) ("By presenting to the court a pleading[,] . . . an attorney . . . certifies that to the best of [her] knowledge, information, and belief," formed after a reasonable inquiry, that the pleading is: (1) "not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation"; (2) "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law"; and (3) supported by available evidence, or evidence likely to be discovered on further investigation); *Stewart v. Hudson Hall LLC*, No. 20-CV-885, 2021 WL 82271, at *3 (S.D.N.Y. Jan. 11, 2021) ("Rule 11 permits sanctions for filing a claim containing frivolous legal arguments or factual allegations utterly lacking in evidentiary support." (citation omitted)); *see also Craig v. City of New York*, No. 20-CV-2152, 2022 WL 2238451, at *1 (E.D.N.Y. June 22, 2022) (imposing sanctions in the form of a fine on the plaintiff's lawyer in light of "the frivolity of [the p]laintiff's contentions, the lack of evidentiary support for them, and counsel's failure to make a reasonable inquiry into those allegations"); *Espindola v. Pizza Stop Corp.*, No. 19-CV-1026, 2019 WL 6729150, at *3 (S.D.N.Y. Dec. 10, 2019) (sanctioning the lawyer and law firm representing the plaintiff jointly by requiring them to reimburse certain of the defendants' attorneys' fees where the lawyer had "signed and filed two complaints on behalf of [the plaintiff] alleging that Espindola worked for two different employers at two different locations at the same time, during a period of approximately six months").